**UNITED STATES ex rel. Marvin FLOWERS, Petitioner,**

v.

**ILLINOIS DEPARTMENT OF CORRECTIONS, Respondent.**

No. 90 C 6505.

United States District Court, N.D. Illinois, E.D.

May 16, 1991.

Professor James B. Haddad, Northwestern University School of Law, Legal Clinic, Chicago, Ill., for petitioner.

Richard London, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

In October 1980, petitioner Marvin Flowers was found guilty of murder in the Circuit Court of Cook County, Illinois. Presently pending before this court is Flowers' petition for writ of habeas corpus. Flowers argues that the state trial court improperly refused the jury's verdict of voluntary manslaughter and that the state trial court gave confusing instructions on murder and voluntary manslaughter.

## I. BACKGROUND

In 1979, Flowers, then only 22 years of age, was employed by Robert Murray. There is evidence in the record that Murray was an alcoholic and that he had alcohol in his blood at the time Flowers killed him. In one of two contradictory statements to the police, Flowers claimed that he and Murray argued over wages that Flowers thought were owed to him. According to Flowers' statement, he and Murray got into a scuffle and then Murray reached for a revolver. Flowers, however, grabbed a baseball bat and struck Murray's head with the bat. When Murray continued to move, Flowers struck him with additional blows and Murray died. According to Flowers, and also consistent with the prosecution's theory as presented to the jury, Flowers then decided to take the bat, the revolver, a coin bank, two power saws, and the automobile that had belonged to Murray, and he drove Murray's car to a location near Flowers' residence. Flowers contended that, prior to killing Murray, he had not intended to steal these items. Flowers did not dispute at trial and does not dispute here that he killed Murray. In closing statements, Flowers' counsel argued that Flowers acted in self-defense or was, at most, guilty of voluntary manslaughter. Here, Flowers argues he should have been found guilty only of voluntary manslaughter, not murder. He does not contend that he should be completely exonerated. He was also found guilty of armed robbery and armed violence. His sentence was 40 years for murder and a 15–year concurrent term for armed robbery.

Central to the dispute in this case are the murder and voluntary manslaughter instructions given to the jury. Before retiring to deliberate, the jury was instructed as follows.[1]

A person commits the crime of murder who kills an individual if, in performing the acts which caused the death, he intends to kill or do great bodily harm to that individual; or he knows that such acts will cause death to that individual; or he knows that such acts create a strong probability of death or great bodily harm to that individual; or he is attempting to commit or is committing the crime of armed robbery.

To sustain the charge of murder, the State must prove the following propositions:

---

1. The trial judge read these written instructions to the jury. It is unclear if the jury was also provided with a copy of the written instructions to take to the jury room during deliberations.

First: That the defendant performed the acts which caused the death of Robert Murray;

Second: That when the defendant did so, he intended to kill or do great bodily harm to Robert Murray; or he knew that his act would cause death or great bodily harm to Robert Murray; or he knew that his acts created a strong probability of death or great bodily harm to Robert Murray; or he was attempting to commit or was committing the crime of armed robbery.

Third: That the defendant was not justified in using the force which he used.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

------

A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself.

------

A person commits the crime of voluntary manslaughter who intentionally or knowingly kills another if, at the time of the killing, he believes that such circumstances exist which would justify the killing, but his belief that such circumstances exist is unreasonable.

------

To sustain the charge of voluntary manslaughter, the State must prove the following propositions:

First: That the defendant intentionally or knowingly performed the acts which caused the death of Robert Murray; and

Second: That when the defendant did so, he believed that circumstances existed which would have justified killing Robert Murray; and

Third: That the defendant's belief that such circumstances existed was unreasonable.

Fourth: That the defendant was not justified in using the force which he used.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

R. 1059–63. The written instructions do not include any use of the term "lesser included offense," do not in any manner instruct the jury on the concept of a lesser included offense, and do not in any way explain to the jury the relationship between the different charges.

The jury was sequestered during deliberations. Because the judge who had presided over the trial had a schedule conflict, another judge presided during the second day of deliberations, a Saturday. During the second day of deliberations, the court asked the foreperson if the jury was close to a verdict. Because the response was yes, the court did not give any additional instruction. After guilty verdicts were returned on both murder and voluntary manslaughter, the following oral instructions were given to the jury by the court.

Now, ladies and gentlemen, we have a slight problem. You are going to have to go back. We have two signed verdicts. One is, we, the jury, find the

defendant, Marvin Flowers, guilty of murder. You also said, we, the jury, find the defendant Marvin Flowers, guilty of voluntary manslaughter.

Voluntary manslaughter, if you read the instructions, is a lesser included offense of voluntary manslaughter [sic]. It's either voluntary manslaughter or murder, it's not both.

I would re-do these two instructions again and send you back and you determine which one you meant.

If you can just get them so I can read them to you, I will send you back with all the instructions and you can decide which one, and whichever one you do not mean you may cross—Was there one count of voluntary manslaughter?

MR. ROGDON [defense counsel]: Yes, sir.

THE COURT: Okay. The murder instruction reads this way: To sustain the charge of murder the State must prove the following propositions: First, that the defendant performed the acts which caused the death of Robert Murray; and second, when the defendant did so, he intended to kill or do great bodily harm to Robert Murray; or he knew his acts would cause death or great bodily harm to Robert Murray; or he knew his acts created a strong probability of death or great bodily harm to Robert Murray; or he was attempting to commit or was committing the crime of armed robbery; third, that the defendant was not justified in using the force which he used.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

As far as the voluntary manslaughter is concerned, it reads: To sustain the charge of voluntary manslaughter the State must prove the following propositions: First, that the defendant intentionally or knowingly performed the acts which caused the death of Robert Murray; and second, that when the defendant did so he believed that the circumstances existed which would have justified killing Robert Murray; and third, the defendant's belief that such circumstances existed were unreasonable; and fourth, the defendant was not justified in using the force which he used.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant guilty.

In other words, you would come out with one of these filled out or not guilty as to both of them. So you cannot have guilty of murder and voluntary manslaughter because one is a lesser included offense of the other.

All right, so you can come back with a not guilty of murder or involuntary manslaughter or guilty of murder or guilty— guilty of voluntary manslaughter. You can't have two of them. One is the lesser included offense of the other. All right?

All right, I will send you back because apparently—Just read the instructions over again if you have any problems. R. 1078–81.

Subsequently, the jury apparently communicated that it had a question and the following proceedings occurred.

THE COURT: Okay. Apparently, I confused you.

Mr. Foreman, you have a question?

THE FOREMAN: Okay. Your Honor, our question is this: We want to know in regards to the instructions, there is a murder charge and the armed violence charge—excuse me, the voluntary manslaughter charge.

THE COURT: Correct.

THE FOREMAN: On those two.

If we render a verdict of guilty on one, does that mean the other one is automatically a not guilty vote?

THE COURT: The other one you don't even vote on it.

THE FOREMAN: In other words, it's a dead vote, we just strike it.

THE COURT: In other words, it's like saying you have two charges. To put it in simple form, aggravated battery and battery. Aggravated battery means when you inflict an injury. One is the lesser included one of the other one. One is a minor one of the other.

Murder is the main one, aggravated battery is under it. Aggravated battery is something—I mean voluntary manslaughter is something less than murder.

THE FOREMAN: Assuming vice versa, if it is voluntary manslaughter, the murder is left blank or crossed out in this particular case?

THE COURT: Well, you can cross it out. Ordinarily you would sign a not guilty of murder. Ordinarily what you would do is sign a not guilty of murder, but since we have gone this far along, for the record I've been talking to you, all I want you to do is settle on one of the two, either murder or voluntary manslaughter, because you can't have them both.

THE FOREMAN: You are signifying if we vote on one we X the verdict of the other one out, correct?

THE COURT: I'm saying they are inconsistent verdicts. In other words, you cannot have murder; you cannot say somebody committed murder and somebody committed less than murder. That's all I'm saying.

So you go back there and have one of the two filled out. It's either murder or it's voluntary manslaughter, but it cannot be both.

THE FOREMAN: But what I am saying in the forms, the technical forms which we have in our hands—

THE COURT: Yes.

THE FOREMAN: (Continuing)—to signify which one we do prefer in those two cases, how do we signify it to you?

THE COURT: Ordinarily if I had been the Judge I would have told you to vote not guilty or guilty of murder and don't do anything on the manslaughter because that's a lesser included offense.

If you find out it's not murder but something less, then you come back, of course, with voluntary manslaughter.

But since you've already signed the verdict and we've talked about it, all I want you to do at this time is X out the one that you settle upon, the voluntary manslaughter or the murder, whichever your intention was in the first place.

THE FOREMAN: You're saying X out the one we don't want.

THE COURT: Correct.

THE FOREMAN: Okay.

THE COURT: That's the simplest way to do it at this point.

THE FOREMAN: That's all we needed to know.

THE COURT: I don't know what Judge Cousins told you before or anything else.

THE FOREMAN: That's all we needed to know, Your Honor. Thank you.

THE COURT: Okay.

R. 1081–84.

The jury then continued to deliberate and subsequently returned the guilty verdict on the murder charge and "X'd" out the guilty verdict form for the voluntary manslaughter charge. The jury also found Flowers guilty of armed robbery and armed violence. No sentence was imposed on the armed violence count.

On November 1, 1982, the Illinois Appellate Court affirmed the conviction by an unpublished order. The Illinois Supreme Court denied leave to appeal on February 1, 1983. Flowers filed a petition for post-conviction relief which was denied by the trial court on August 12, 1986. Relying on *People v. Reddick*, 123 Ill.2d 184, 122 Ill. Dec. 1, 526 N.E.2d 141 (1988), the Illinois Appellate Court vacated the murder conviction on the ground that the instructions failed to impose the burden on the state to

prove that Flowers did not believe his use of force was justified. *People v. Flowers*, 192 Ill.App.3d 292, 139 Ill.Dec. 381, 548 N.E.2d 766 (1st Dist.1989) (*"Flowers I"*). The Appellate Court affirmed the armed robbery conviction, but remanded the case for a new trial on the murder conviction. The Illinois Supreme Court, however, reversed the Appellate Court and affirmed the denial of post-conviction relief. *People v. Flowers*, 138 Ill.2d 218, 149 Ill.Dec. 304, 561 N.E.2d 674 (1990) (*"Flowers II"*). The Illinois Supreme Court held that no issues were waived for purposes of post-conviction relief, but held that ordering further deliberations after the initial return of guilty verdicts on all counts was not a double jeopardy violation; that the jury instructions were not so confusing as to constitute a violation of due process; and that *Reddick* would not be applied retroactively to cases on post-conviction review.

In his present petition, Flowers raises two grounds for relief. Respondent agrees that all issues raised in the present petition have been fully exhausted in the state courts and that none have been waived. Flowers' principal argument is that the trial court should have accepted the initial verdicts (guilty on both murder and voluntary manslaughter) and entered judgment on the voluntary manslaughter verdict only. Flowers contends that allowing the jury to deliberate further violated principles of double jeopardy. Alternatively, to the extent it was proper to permit further deliberations, Flowers argues that the additional oral instructions, considered along with the initial written instructions, were so inherently contradictory and confusing as to constitute a violation of due process. If Flowers is successful on the principal claim, the murder conviction must be vacated and Flowers would be entitled to be resentenced on voluntary manslaughter and armed robbery. If successful on the alternative argument, the murder convic-

tion must be vacated and the state would have the opportunity to retry the murder and manslaughter counts. Respondent argues that there was no double jeopardy violation because judgment was never entered on the initial verdicts and was not required to be entered because the verdicts were inconsistent. As for the alternative ground, respondent argues that it fails for three reasons: (a) *Flowers II* or *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), precludes retroactive application of *Reddick;* (b) the instructions were not inherently confusing; and (c) any error that may have occurred was harmless.

## II. MURDER AND VOLUNTARY MANSLAUGHTER

The development of Illinois law with respect to murder and voluntary manslaughter has an important bearing on the issues presented in this case. Illinois has codified the common law rule that voluntary manslaughter is a lesser included offense of murder. *See* Ill.Rev.Stat. ch. 38, ¶ 9–2 (1979);[2] *People v. Lewis*, 375 Ill. 330, 31 N.E.2d 795 (1940), *cert. denied*, 314 U.S. 628, 62 S.Ct. 58, 86 L.Ed. 504 (1941); Bowman, *Committee Comments to § 9–2*, (1961, rev. 1972), *reprinted in* Ill.Ann.Stat. ch. 38, ¶ 9–2 (Smith–Hurd 1979). The parties do not dispute that it is well-settled law in Illinois that a defendant cannot be guilty of both murder and manslaughter because the offenses involve different mental states. *See People v. Almo*, 108 Ill.2d 54, 90 Ill.Dec. 885, 483 N.E.2d 203 (1985); *Lewis, supra; Steiner v. People*, 187 Ill. 244, 58 N.E. 383 (1900); *People v. Kendricks*, 121 Ill.App.3d 442, 77 Ill.Dec. 41, 459 N.E.2d 1137 (1st Dist.1984); *People v. Stuller*, 71 Ill.App.3d 118, 27 Ill.Dec. 529, 389 N.E.2d 593 (5th Dist.1979); *People v. Gajda*, 87 Ill.App.2d 316, 232 N.E.2d 49 (1st Dist.1967).

2. In 1987, voluntary manslaughter was essentially redefined as a type of second degree murder. *See* Ill.Rev.Stat. ch. 38, ¶ 9–2(a)(2) (1987). The legislature also clarified the applicable burdens of proof. *See id.* ¶ 9–2(c). Prior to 1962, voluntary manslaughter was contained in §§ 361 and 362 of the Criminal Code. *See*

O'Neill, *"With Malice Toward None": A Solution to an Illinois Homicide Quandary*, 32 DePaul L.Rev. 107 (1982); Haddad, *Allocation of Burdens in Murder–Voluntary Manslaughter Cases: An Affirmative Defense Approach*, 59 Chi–Kent L.Rev. 23 (1982).

In 1968, the first edition of Illinois Pattern Jury Instructions Criminal ("IPI") was issued. The pattern instructions are not law, but they are to be used unless the court determines that they do not accurately state the law. Ill.Sup.Ct.R. 451, Ill.Rev. Stat. ch. 110A, ¶ 451. The 1968 IPI pattern instructions for murder and manslaughter are the same as the written instructions given to the jury in this case. *See* IPI 7.02, 7.06. Those instructions, however, were only to be used for instructing the jury on murder *or* manslaughter. If the jury was to be instructed on both offenses, a modified version of IPI 7.02 was to be given. *See* IPI 27.01 (sample set of instructions). This version included an additional element of murder that had to be proven by the state: *"Fourth:* That the defendant did not believe that circumstances existed which justified the use of the force which he used." Although the 1968 IPI instructions included this fourth element, it apparently was not uncommon for this element to be omitted from the instructions as it was in the present case.

In 1981, after Flowers had been tried, a second edition of the IPI was issued (hereinafter "IPI 2d"). IPI 2d does not include the fourth element in its pattern instruction for a case involving both murder and voluntary manslaughter. *See* IPI 2d 27.01 (sample set of instructions). Although the fourth element was no longer included in the pattern instructions, it apparently also was not uncommon for some courts to continue to include the fourth element when instructing juries.

At the time Flowers was tried, the IPI included the fourth element for murder in its pattern instructions for a case involving murder and voluntary manslaughter. *See* IPI 27.01. As of the time of Flowers' trial,

one Appellate Court had held that it was plain error to omit the fourth element of the pattern murder instruction in IPI 27.01. *People v. Stuller,* 71 Ill.App.3d 118, 27 Ill.Dec. 529, 531–32, 389 N.E.2d 593, 595–96 (5th Dist.1979). In another case, the Appellate Court had held that, in cases where the evidence could support a verdict of voluntary manslaughter, part of the state's burden in proving murder is to prove the defendant did not have the mental state that would support voluntary manslaughter. *People v. Seaberry,* 63 Ill.App.3d 718, 20 Ill.Dec. 533, 536, 380 N.E.2d 511, 514 (2d Dist.1978) (voluntary manslaughter based on heat of passion; state had burden of proving the defendant did not act in the heat of passion).[3] Appellate Court cases subsequent to 1980 are also consistent with *Stuller* and *Seaberry. See People v. Bolden,* 132 Ill.App.3d 1047, 87 Ill.Dec. 852, 859, 477 N.E.2d 1380, 1387 (4th Dist.1985) ("the burden is on the State to negate the elements which would lead to a verdict of voluntary manslaughter");[4] *People v. Chevalier,* 167 Ill.App.3d 790, 118 Ill.Dec. 563, 569–71, 521 N.E.2d 1256, 1262–64 (2d Dist. 1988) ("where voluntary manslaughter is properly an issue, a murder conviction is proper only if the evidence is sufficient to prove beyond a reasonable doubt the absence of the element which would reduce the homicide from murder to voluntary manslaughter"), *rev'd on other grounds,* 131 Ill.2d 66, 136 Ill.Dec. 167, 544 N.E.2d 942 (1989).[5] *Stuller,* 27 Ill.Dec. at 531, 389 N.E.2d at 595, also held that where the jury returned verdicts of guilty on both murder and voluntary manslaughter, the proper verdict to enter was voluntary manslaughter, not murder. *Accord People v. Washington,* 127 Ill.App.3d 365, 82 Ill.Dec. 505, 513, 468 N.E.2d 1285, 1293 (1st Dist. 1984); *Kendricks,* 77 Ill.Dec. at 44, 459

---

**3.** Respondent does not point to any cases from 1980 or earlier with holdings contrary to those in *Stuller* and *Seaberry.* Although not relied on by respondent, Flowers points to *People v. Diaz,* 38 Ill.App.3d 447, 348 N.E.2d 199, 207 n. 2 (1st Dist.1976), which raises some questions regarding the fourth element of murder contained in IPI 27.01. As Flowers correctly points out, the minimal discussion in that footnote is *dictum* and does not resolve the questions it raises.

**4.** In *Bolden,* the Fourth District overruled *People v. March,* 95 Ill.App.3d 46, 50 Ill.Dec. 763, 419 N.E.2d 1212 (4th Dist.1981), to the extent that it was contrary to the holding in *Bolden.*

**5.** In *Chevalier,* the Second District rejected its prior decision in *People v. McGee,* 110 Ill.App.3d 766, 66 Ill.Dec. 894, 443 N.E.2d 1057 (2d Dist. 1982), which had relied on *March,* and instead chose to follow *Bolden.*

N.E.2d at 1140; *People v. Fox*, 114 Ill. App.3d 593, 70 Ill.Dec. 387, 389, 449 N.E.2d 261, 263 (1st Dist.1983).[6]

In *People v. Hoffer*, 106 Ill.2d 186, 88 Ill.Dec. 20, 478 N.E.2d 335, *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985) (*"Hoffer I"*), although the defendant was tried while IPI 2d was in existence, the jury was instructed consistently with IPI 27.01 and therefore was instructed on the fourth element of murder. The jury returned guilty verdicts on both murder and voluntary manslaughter and the trial court only entered judgment on the murder conviction. The Illinois Supreme Court held that, given the fact the jury was properly instructed on the mental elements of murder and manslaughter, the verdicts were inconsistent and therefore had to be vacated. *Id.* 88 Ill.Dec. at 25, 478 N.E.2d at 340. The court further held that a retrial would not violate double jeopardy principles because the verdicts were inconsistent. *Id.* 88 Ill.Dec. at 26–27, 478 N.E.2d at 341–42. The court also indicated that, in light of the significant number of cases where juries returned verdicts of both murder and manslaughter, an amendment to the pattern instructions was "needed." *Id.* 88 Ill.Dec. at 27–28, 478 N.E.2d at 342–43.

In *People v. Almo*, 108 Ill.2d 54, 90 Ill. Dec. 885, 483 N.E.2d 203 (1985), the Illinois Supreme Court again addressed the question of a jury returning guilty verdicts on murder and voluntary manslaughter. At the time Almo was tried, the 1968 IPI was still in effect. Nevertheless, the trial court did not include the fourth element in its murder instruction to the jury. *See id.* 90 Ill.Dec. at 889, 483 N.E.2d at 207. After receiving a question from the jury regarding whether it had to return verdicts on all counts, the jury was further instructed that it "need" not return a verdict on voluntary manslaughter if it found the defendant guilty of murder or, alternatively, if it found the defendant guilty of voluntary manslaughter, it "need" not return a verdict on murder. *See id.* 90 Ill.Dec. at 888, 483 N.E.2d at 206. After the jury returned

guilty verdicts on both murder and voluntary manslaughter, the jury was then instructed that it "must" not return a verdict on voluntary manslaughter if it found the defendant guilty of murder and *vice versa*. The jury then returned a guilty verdict on murder and no verdict on voluntary manslaughter. The defendant argued that the trial court should have entered judgment on voluntary manslaughter when the verdicts were initially returned. The Illinois Supreme Court held that "the finding of a jury does not become a verdict until it has been received, accepted by the court and entered of record." *Id.* 90 Ill.Dec. at 889, 483 N.E.2d at 207 (quoting *People v. Wilson*, 51 Ill.2d 302, 309, 281 N.E.2d 626 (1972)). Relying on *Hoffer I*, the court held that the verdicts were legally inconsistent and therefore it would have been improper for the trial court to accept either of the initial verdicts. *Id.* 90 Ill.Dec. at 889, 483 N.E.2d at 207. Clarifying the supplementary instruction and ordering further deliberations was held to be proper. As does Flowers, Almo argued that the initial verdicts were not inconsistent given that the fourth element was omitted from the instruction for murder. Unlike the situation with Flowers, supplemental instructions were given prior to any verdicts being returned. Thus, the court held that, in light of the supplemental instructions, the initial verdicts were not consistent with the instructions which, though poorly worded (using "need" instead of "must"), indicated to the jurors that they could not return guilty verdicts on both murder and voluntary manslaughter. *Id.* 90 Ill.Dec. at 890, 483 N.E.2d at 208. The court expressly stated that it "need not address the issue whether two verdicts were legally consistent without the fourth proposition." *Id.*

In *People v. Reddick*, 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988), the Illinois Supreme Court reached a holding consistent with the *Stuller* and *Seaberry* line of Appellate Court cases. The court held that, where the issue of voluntary man-

---

**6.** These cases concerning which of the two verdicts to enter will be referred to as the *Stul-* *ler–Washington* line of cases.

slaughter is also properly before the jury, the state has the burden on the murder charge of disproving the existence of the voluntary manslaughter mental state. *Id.* 122 Ill.Dec. at 6, 526 N.E.2d at 146. The court further held that the IPI 2d instructions for murder were inadequate in that IPI 2d omitted the fourth element and thus did not place the burden of proof for this element on the state. *See id.* 122 Ill.Dec. at 5–6, 526 N.E.2d at 145–46. The court also held in *Reddick* that omitting the fourth element was a grave error that was not waived by failure to object to the instruction at the time of trial. *Id.* 122 Ill. Dec. at 7, 526 N.E.2d at 147.

The most recent Illinois Supreme Court case related to the issues before this court is *Flowers II, supra,* the appeal concerning Flowers' petition for post-conviction relief. 149 Ill.Dec. 304, 561 N.E.2d 674 (1990). On the issue of double jeopardy, the court distinguished the *Stuller–Washington* line of cases on the ground that they all involved situations where the trial judge had improperly entered judgment on the murder verdict instead of allowing the jury to deliberate further as was done in Flowers' trial. *Id.* 149 Ill.Dec. at 309, 561 N.E.2d at 679. The court held that further deliberations were proper because the initial verdicts were legally inconsistent.[7] *Id.* The court also relied on *Almo* as being a case in which supplemental instructions cleared up any problems "before any verdicts were entered." *Flowers II,* 149 Ill.Dec. at 308, 561 N.E.2d at 678 (quoting *Almo,* 90 Ill. Dec. at 890, 483 N.E.2d at 208).

■ On the claim that the instructions were so inherently confusing and contradictory so as to violate due process, the court held that the presiding judge's oral instructions, while "not in the clearest manner," were sufficient to clear up any existing confusion. *Flowers II,* 149 Ill.Dec. at

310, 561 N.E.2d at 680. On the question of whether the instructions were deficient in light of *Reddick* in that they incorrectly set forth the government's burden of proof, the court held that *Reddick* set forth a new rule of law that would not be applied retroactively. *Flowers II,* 149 Ill.Dec. at 311–14, 561 N.E.2d at 681–84. Relying on *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), which governs retroactive application of new constitutional rules in federal habeas corpus proceedings, the Illinois Supreme Court decided to apply a similar rule to Illinois post-conviction proceedings. Under this rule, new rulings will not be applied in post-conviction proceedings unless the ruling was issued prior to the completion of the defendant's direct appeal or unless certain other exceptions are satisfied. Since *Reddick* was decided in 1988 and Flowers completed his direct appeal in 1983, the court declined to apply *Reddick* retroactively. In reaching this conclusion, the court also determined that the new rule enunciated in *Reddick* was not a component of basic due process and therefore did not satisfy the narrow exception of being a procedure implicit in the concept of ordered liberty. *Flowers II,* 149 Ill.Dec. at 313–14, 561 N.E.2d at 683–84.

The murder and voluntary manslaughter instructions have also generated federal habeas corpus litigation. In *Hoffer v. Morrow,* 797 F.2d 348 (7th Cir.1986) ("*Hoffer II*"), the Seventh Circuit held that there was no violation of double jeopardy in retrying Hoffer.[8] Given the fact that the jury in the first trial was instructed on the fourth element of murder, guilty verdicts on both voluntary manslaughter and murder clearly were legally impossible and therefore had no estoppel effect that would evoke double jeopardy. *See id.* at 352.

---

**7.** "Defendant points out that the instructions in this case failed to include the fourth proposition, unlike the instructions in *Hoffer,* and therefore the two instructions were not inconsistent. However, the trial judge understood that the two convictions could not be entered and explained to the jury that they were incompatible. This admonition compensated for any error in failing to instruct on the fourth proposi-

tion." *Flowers II,* 149 Ill.Dec. at 308, 561 N.E.2d at 678.

**8.** Most of the relevant facts of *Hoffer II* are set forth above in the discussion of *Hoffer I.* In *Hoffer II,* Hoffer sought habeas corpus relief preventing a retrial following the remand ordered in *Hoffer I.*

In *Falconer v. Lane*, 905 F.2d 1129 (7th Cir.1990), the jury in Falconer's trial was instructed in accordance with IPI 2d and returned a verdict of guilty on the murder charge. The Seventh Circuit held that the IPI 2d instructions, which omit the fourth element of murder, are misleading and cannot be expected to be understood by a lay jury so that their use constitutes a violation of due process. *Id.* at 1135–36. The Seventh Circuit characterized its decision as "effectuat[ing] the holding of *Reddick* through the vehicle of the Due Process Clause." *Id.* at 1136. It is clear from the opinion that the error was inherently confusing jury instructions, not a mere failure to follow *Reddick*'s interpretation of state law. *See United States ex rel. Fleming v. Huch*, 924 F.2d 679, 682 (7th Cir.1991). The Seventh Circuit also rejected the state's argument that the error was harmless. *Falconer*, 905 F.2d at 1136–37. Additionally, the court expressly noted that the state did not raise any argument based on *Teague* and therefore the retroactivity rule stated in *Teague* was not considered. *Falconer*, 905 F.2d at 1137.

In *Rose v. Lane*, 910 F.2d 400 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 515, 112 L.Ed.2d 526 (1990), the jury was instructed in accordance with IPI 2d and the jury returned a guilty verdict on the murder charge. The court found *Falconer* to be dispositive of the merits of Rose's habeas corpus claim. *Id.* at 402. The Seventh Circuit again rejected a harmless error argument, giving the following three reasons. *See id.* at 403. First, there was evidence in the record to support that Rose believed he was acting in self-defense, including evidence that the victim had been threatening Rose, that Rose had seen the victim with a gun earlier in the day, and that the victim was drunk and belligerent. Second, the jury asked questions about whether it had to return verdicts on all counts, "which indicates possible jury confusion over the manslaughter instructions and therefore contributes to our finding that the instructions were not harmless." Third,

*Falconer* found that the instructions were inherently prejudicial because they misdirected the jury, holding that "[e]xplicit misdirection on this scale violates the constitutional guarantee of due process and demands a new trial or resentencing." 905 F.2d at 1137. The reasoning of *Falconer* on the harmless error issue cannot be confined to the facts of that case. We conclude that the instructions in question here were not harmless.

*United States ex rel. Fleming v. Huch*, 924 F.2d 679 (7th Cir.1991), also involved use of the IPI 2d instructions and the jury returning a verdict of guilty on the murder charge. Following *Falconer* and *Rose, see Fleming*, 924 F.2d at 679, the Seventh Circuit again ordered that the writ be granted. As stated in that case, the law is now clear that use of the IPI 2d instructions violates due process. *Id.* at 682. The Seventh Circuit also rejected a harmless error argument, repeating that the instructions were "inherently prejudicial" and indicating that use of the instructions was unlikely to be found to be harmless under any situation. *Id.* at 683.

Two recent district court opinions also address this issue. In *United States ex rel. Verdin v. O'Leary*, No. 89 C 0895, 1990 WL 103653 (N.D.Ill. June 27, 1990) ("*Verdin I*"), *partial reconsideration granted* 1990 WL 133415 (Sept. 12, 1990) ("*Verdin II*") *reconsideration denied*, 1990 WL 156394 (Oct. 9, 1990) ("*Verdin III*"), the IPI 2d instructions were used. The jury initially returned guilty verdicts on both murder and voluntary manslaughter. Without consulting with the attorneys who were present, the judge immediately ordered the jury to return to the jury room and decide which of the two verdicts was applicable.[9] Subsequently, the jury sent a note and the judge responded without informing the attorneys nor including his oral instructions in the record. The judge summarized his additional instructions as being that the jury should return only two verdicts (the case involved two counts of murder) if it found defendant guilty of

---

9. Verdin did not present any double jeopardy claim, so that issue is not discussed in *Verdin*.

murder. The jury then returned guilty verdicts on the murder charges. In *Verdin I,* it was held that Verdin had waived his claim regarding the instructions for failure to adequately raise it in the state courts. It was also held that Verdin's claims as to the judge's *ex parte* contact with the jury, which required consideration of the instructions, failed on the ground that the federal court was required to defer to the Illinois courts' determination that the instructions adequately stated Illinois law and the factual finding that there was no jury confusion. Two days after *Verdin I* was issued, the Seventh Circuit issued *Falconer.* *Verdin II* reconsiders Verdin's claims in light of *Falconer* and grants relief. *Verdin II* follows *Falconer* in holding that the IPI 2d instructions are inherently deficient and holds that additional instructions that only one verdict should be returned are insufficient to cure the deficiencies.[10] In *Verdin III,* the state's motion for reconsideration was denied. In its reconsideration motion, the state relied on *Flowers II* in arguing that the instructions in Verdin's case were not confusing. *Verdin III* rejects that argument, in part, because *Flowers II* was found to be inconsistent with *Falconer.*

In *United States ex rel. Taylor v. Gilmore,* 770 F.Supp. 445 (C.D.Ill.1990), the jury was not instructed as to the fourth element of murder. The voluntary manslaughter instruction did include the following additional language that is not found in IPI 2d 27.01. "As stated previously, the Defendant is charged with committing the offense of murder and voluntary manslaughter. If you find the Defendant guilty, you must find him guilty of either offense; but not both. On the other hand, if you find the Defendant not guilty, you can find him not guilty on either or both offenses." The defendant was found guilty of murder. Before the federal court, the state conceded that *Falconer* necessitated a finding that the instructions violated due process. The state, however, argued that *Teague* precluded applying *Falconer* in Taylor's case. *Taylor* agreed with *Flowers II* that *Reddick* constituted a new rule of law. *Taylor* also stated that "when the Seventh Circuit declared that the erroneous instructions criticized in *Reddick* constituted a due process violation, it seemed to be announcing a new constitutional rule of criminal procedure. The Seventh Circuit in *Falconer* did not rest its decision upon other cases finding the same or similar jury instruction pattern to be unconstitutional." The determination in *Taylor* to follow *Flowers II,* however, ultimately rests on *Reddick* being the announcement of a new rule, not *Falconer* being a new rule. The court further held that the new rule announced in *Reddick* was not one implicit in the concept of ordered liberty.

## III. DOUBLE JEOPARDY

The double jeopardy claim will be addressed first.[11] In *Flowers II,* 149 Ill.Dec. at 309, 561 N.E.2d at 679, the court indicated that double jeopardy could not apply because only one verdict was ever entered, the initial verdict forms having been rejected and never entered. Read in context, the Illinois Supreme Court was not saying that a court's refusal to enter a verdict prevents jeopardy from attaching, but that refusal of a verdict on proper grounds prevents

---

10. *Verdin II* also narrows *Verdin I's* interpretation of the Illinois courts' findings as to confusion. But to the extent there was a relevant finding in the Illinois courts, *Verdin II* holds that a finding of no confusion was not supported by the record given the inherently confusing nature of the instructions. *See Verdin I;* 28 U.S.C. § 2254(d).

11. At the time the presiding judge ordered further deliberations, Flowers made no objection to such a procedure. R. 1081. Also, no reference to double jeopardy is included in Flowers' motion for a new trial. R. 1212–13. The briefs for Flowers' direct appeal are not included, but, based on the Appellate Court opinion, double jeopardy was not raised on direct appeal though the related issue of improperly entering judgment on murder instead of voluntary manslaughter was raised. *See People v. Flowers,* No. 1–80–2950 at 12–15 (Ill.App.Ct. 1st Dist. Nov. 1, 1982) [109 Ill.App.3d 1211, 71 Ill.Dec. 885, 451 N.E.2d 1039 (table) ] (unpublished order). In any event, on review of the post-conviction petition, the Illinois Supreme Court considered double jeopardy on the merits and respondent presently makes no argument that Flowers waived any double jeopardy claim.

jeopardy from attaching. In other words, because the verdicts were inconsistent, it was proper for the trial judge to reject the initial verdicts and order further deliberations. That this is what the court meant is made more clear by the fact that it cites *Almo*, 90 Ill.Dec. at 889, 483 N.E.2d at 207 (initial verdicts rejected because inconsistent), and *Wilson*, 281 N.E.2d at 630 (refusal to accept unsigned verdict forms). This court does not construe respondent's argument, nor the opinion in *Flowers II*, as indicating that mere failure to enter a jury's verdict prevents jeopardy from attaching. *Cf. United States v. Taylor*, 507 F.2d 166, 168 & n. 2 (5th Cir.1975). The parties appear to both be in agreement that, absent a legal deficiency in the initial verdicts, the court was obliged to accept them.[12]

■ The next question to address is whether the initial verdicts were legally inconsistent or otherwise deficient so that there was a sufficient basis for not accepting them. Flowers does not dispute that legally inconsistent verdicts need not be accepted.[13] *See Hoffer II*, 797 F.2d at 352. Flowers also does not dispute that under the applicable law, it is legally impossible to be guilty of both murder and voluntary manslaughter because the mental state required for one necessarily negates the mental state required for the other. *See Almo*, 90 Ill.Dec. at 889, 483 N.E.2d at 207. Flow-

ers argues, however, that the jury was not instructed in accordance with the applicable law and that under the instructions given, it was possible to find Flowers guilty of both murder and voluntary manslaughter because the fourth element was omitted from the murder instruction.

It is arguable (but the *Flowers II* court thought it speculative) that under the instructions given, a jury finding the defendant guilty of voluntary manslaughter should also find the defendant guilty of murder. *See* O'Neill, *"With Malice Toward None": A Solution to an Illinois Homicide Quandary*, 32 DePaul L.Rev. 107, 124 (1982); Haddad, *Allocation of Burdens in Murder–Voluntary Manslaughter Cases: An Affirmative Defense Approach*, 59 Chi.–Kent L.Rev. 23, 24–25 (1982). This is so because proof of the First, Third, and Fourth elements of voluntary manslaughter satisfy the three elements of murder. Thus, if the jury finds all four elements of voluntary manslaughter were proven, it could also find that all three elements of murder have been proven. Since there were initially no instructions indicating that the jury could only find guilt on murder *or* voluntary manslaughter, nor any instruction indicating in any way that one charge was a lesser included offense of the other, following the instructions would result in guilty verdicts

---

12. To the extent that respondent is arguing otherwise, that argument is rejected. *See People v. Robinson*, 45 N.Y.2d 448, 410 N.Y.S.2d 59, 61–62, 382 N.E.2d 759, 761 (1978); *State v. Sumner*, 269 N.C. 555, 153 S.E.2d 111, 112 (1967); *Woodham v. State*, 28 Ala.App. 62, 178 So. 464, 466 (1938). *Compare United States v. Daigle*, 149 F.Supp. 409, 413–15 (D.D.C.), *aff'd*, 248 F.2d 608 (D.C.Cir.1957) (per curiam), *cert. denied*, 355 U.S. 913, 78 S.Ct. 344, 2 L.Ed.2d 274 (1958); *Hoffer II*, 797 F.2d at 352. As Flowers points out, accepting such an argument would produce the absurd result that a judge could simply refuse to accept a not guilty verdict because the judge disagreed with it and require the jury to continue to deliberate or simply refuse to enter a verdict. Under such circumstances, it would clearly be improper to order a retrial. No federal case was found that held that entry of a returned verdict was necessary in order for jeopardy to attach except in circumstances where there was some sufficient reason for not entering the verdict as returned. *See, e.g., Hof-*

*fer II, supra; United States v. Hiland*, 909 F.2d 1114, 1136 (8th Cir.1990) (due to error in instructions, special verdict was legally insufficient); *United States v. Mears*, 614 F.2d 1175, 1179 (8th Cir.), *cert. denied*, 446 U.S. 945, 100 S.Ct. 2174, 64 L.Ed.2d 801 (1980) (foreperson informed court that jury had mistakenly signed not guilty form when it intended to sign guilty form); *United States v. Love*, 597 F.2d 81, 85 (6th Cir.1979) (poll of jury showed lack of unanimity as to not guilty verdict); *Brown v. Gunter*, 562 F.2d 122, 125 (1st Cir.1977) (confusion resulted in incorrect verdict being returned).

13. Generally, inconsistencies in verdicts on multiple counts or multiple defendants are not a basis for rejecting a jury's verdict. *See United States v. Niemiec*, 611 F.2d 1207, 1210 (7th Cir. 1980); *United States v. Mathis*, 579 F.2d 415, 418 (7th Cir.1978). But where a guilty verdict on one count necessarily negates an element essential to another count on which the defendant was found guilty, the two verdicts cannot stand.

being returned on both murder and voluntary manslaughter if the jury found that the elements of voluntary manslaughter had been proven.

⬛ The question then becomes one of which law applies in determining if the verdict is legally inconsistent. Is it the law as set forth in the applicable statutes and case law or is it the law as set forth in the jury instructions? It is presumed that a jury follows the instructions given to it. *See Parker v. Randolph*, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979) (plurality); *United States v. Sababu*, 891 F.2d 1308, 1331–32 (7th Cir.1989). Also, unopposed instructions generally become the applicable law for the case, even if inconsistent with existing law. *See Sims v. Mulcahy*, 902 F.2d 524, 536 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990); *Rakovich v. Wade*, 850 F.2d 1180, 1192 (7th Cir.) (en banc), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988); *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 675 (7th Cir.1985), *cert. denied*, 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986).[14] However, the Illinois Supreme Court has held that because the verdicts returned were legally inconsistent, neither could be entered by the trial court. *Flowers II*, 149 Ill.Dec. at 308, 561 N.E.2d at 678. The court found that what the jury intended was speculative. This is a finding of fact which must be respected by this court. The Supreme Court held that the proper procedure to follow was to further instruct the jury and order it to resume deliberations as was done. These determinations of fact and procedure deserve respect from this court. Under the circumstances, no verdict was required to be entered and

requiring further deliberations did not violate double jeopardy protections.

## IV. DUE PROCESS

⬛ It still must be determined if Flowers is entitled to relief on his due process claim. As respondent concedes, *Fleming*, 924 F.2d 679, puts to rest any question that the initial written instructions did not violate due process because they were inherently confusing. Respondent, however, argues that the supplemental oral instructions cured any deficiencies contained in the written instructions. The instructions given at the time the verdicts were initially returned, R. 1078–81, were not sufficient to cure the inherent confusion. All that the jury was told was that they could not return verdicts of guilty on both murder and voluntary manslaughter. A confusing reference was also made to a lesser included offense, but the jury was not told which offense that was.[15] The jury was not instructed as to the fourth element of murder, was not told which offense was the lesser included offense, was not told what is meant by a lesser included offense, and was not told what to do if it thought the elements of both had been proven (which was still possible since no instruction had been given on the fourth element). Simply being told that only one guilty verdict should be returned on the two counts does not cure the inherent deficiencies in the written instructions. *See Verdin II.*

⬛ Later, after the jury through its foreperson stated that it was confused, the judge gave further oral instructions. R. 1081–84. This time the judge referred to voluntary manslaughter as being the lesser offense. In essence, the judge also told the

---

**14.** In criminal cases, this rule generally is not absolute. In federal court, a plain error doctrine permits the defendant to raise posttrial objections to instructions for which there was no prior objection. *See* Fed.R.Crim.P. 52(b); *United States v. Medley*, 913 F.2d 1248, 1260 (7th Cir.1990). In Illinois criminal cases, the untimeliness of an objection does not waive "substantial defects" in the instructions "if the interests of justice require" that the objection be considered. Ill.Sup.Ct.R. 451(c), Ill.Rev.Stat. ch. 110A, ¶ 451(c). *See Flowers II*, 149 Ill.Dec. at 309, 561 N.E.2d at 679.

**15.** The judge initially misspoke and stated, "*Voluntary manslaughter,* if you read the instructions, is a lesser included offense of *voluntary manslaughter.*" R. 1078. Also, the term "lesser included offense" is not contained in the written instructions, which the judge presiding over the jury would not have known since he did not preside at the trial. The judge also stated, "So you cannot have guilty of murder and voluntary manslaughter because one is a lesser included offense of the other." R. 1080–81.

jurors that it should consider murder first and, if that was proven, the jury need not consider voluntary manslaughter. That instruction would be correct if the fourth element was included in the voluntary manslaughter charge, but was not correct without the fourth element. Without the fourth element in the murder instruction, the jury might never consider voluntary manslaughter. It was not sufficiently explained under what circumstances voluntary manslaughter should be considered. The judge did say, "If you find out it's not murder but something less, then you come back, of course, with voluntary manslaughter." R. 1084. But, under the instructions given, if the jury first found an element of murder missing, it would also have to find that an element of voluntary manslaughter was missing. Despite the additional instructions, the jury was at best still left with confusing instructions or, at worst, directed not to consider voluntary manslaughter. As in *Falconer*, "the jury may have been left with the false impression that it could convict the petitioner of murder even if [he] possessed ... the mitigating state[ ] of mind described in the voluntary manslaughter instruction." 905 F.2d at 1136. The instructions remained inherently confusing even after the supplemental oral instructions. The inherently confusing nature of the instructions constitutes a due process violation. *Falconer, supra; Rose, supra; Fleming, supra; Verdin, supra.*

■ Respondent argues that the error was harmless. Given the inherently prejudicial nature of the error, that there is evidence supporting Flowers' contention that he believed his actions were justified, and that the jury initially returned a voluntary manslaughter verdict, the error cannot be considered harmless beyond a reasonable doubt. *See Rose*, 910 F.2d at 403; *Fleming*, 924 F.2d at 683. Respondent argues that the present case is different because here the jury found defendant guilty of armed robbery and therefore could have found him guilty of felony murder, which

can preclude being guilty of voluntary manslaughter because felony murder does not contain the intent element of ordinary murder. *See People v. Moore*, 95 Ill.2d 404, 69 Ill.Dec. 640, 447 N.E.2d 1327 (1983). Since the Illinois Supreme Court did not find any error, it did not have to consider this harmless error argument. The Illinois Appellate Court, however, considered it and rejected it. *See Flowers I*, 139 Ill.Dec. at 386, 548 N.E.2d at 771. Although that case was reversed on other grounds by *Flowers II*, the reasoning as to harmless error is persuasive. Flowers contended that he did not intend to steal Murray's property until after he had killed him. Under those circumstances, he would not be guilty of felony murder.[16] It cannot be concluded beyond a reasonable doubt that a jury would not make such a finding. Therefore, the error was not harmless.

■ The one remaining issue is the question of whether granting relief on the due process claim would be retroactive application of a new rule that is prohibited by *Flowers II* or *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In *Teague*, the Supreme Court held that new constitutional rules of criminal procedure would not be applied retroactively to cases on collateral review. *See id.* at 300–01, 109 S.Ct. at 1069–70. As the Court noted, it is "often difficult to determine when a case announces a new rule.... In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.... To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* at 301, 109 S.Ct. at 1070. The Court identified two exceptions, one of which is that "a new rule should be applied retroactively if it requires the observance of 'those procedures that are "implicit in the concept of ordered liberty." ' " *Id.* at 307, 109 S.Ct. at 1073 (quoting *Mackey v. United States*, 401 U.S. 667, 693, 91 S.Ct.

---

**16.** The jury was never instructed that a finding of felony murder would preclude a finding of    voluntary manslaughter.

1160, 1180, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part) (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937) (Cardozo, J.))). The Court further narrows this exception by explaining that it is limited to procedures that both "implicate the fundamental fairness of the trial" and "without which the likelihood of an accurate conviction is seriously diminished." *Teague,* 489 U.S. at 312–13, 109 S.Ct. at 1076–77. *Sawyer v. Smith,* —— U.S. ——, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990), reemphasizes that both criteria must be satisfied, the rule must be both fundamental in nature and improve fact-finding procedures. *Sawyer* also clarifies that the determination of whether a particular rule is new is based solely on constitutional precedents; that state law may have previously established the same result is not sufficient. *Id.* at 2830.

The first component of the *Teague* analysis is to determine if a new rule was applied. Although respondent focuses exclusively on the question of whether *Reddick* announced a new rule, that is not the proper focus. *Reddick* principally relied on state law principles, whereas Flowers' claim in this court is a federal due process claim. The proper focus is on whether *Falconer* should be considered a new rule. *Falconer,* 905 F.2d at 1135, relied on *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), and *Clark v. Jago,* 676 F.2d 1099 (6th Cir.1982), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984), both of which were decided prior to Flowers completing his direct appeal in 1983. While neither *Cupp* nor *Clark* concern Illinois's murder and voluntary manslaughter statutes, they do make clear that instructions on state law that misdirect, mislead, or confuse the jury can constitute violations of federal due process. *See also Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977); *Tyler v. Phelps,* 643 F.2d 1095, 1100 (5th Cir.1981).

These cases placed the state court on sufficient notice that the federal Constitution mandates jury instructions that do not so misdirect, mislead, or confuse the jury

as to infect the entire trial. Finding the instructions given in this case to be consistent with *Cupp* and its progeny would not be a "reasonable, good-faith interpretation[ ] of existing precedents made by a state court[ ]." *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990) (quoting *Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990)). Stated inversely, finding the instructions in this case to be misleading and confusing is "compelled" by the precedents existing during the time Flowers' case was on direct appeal. *Saffle,* 110 S.Ct. at 1260. That this is true is supported by the fact that *Falconer* required relatively little discussion of whether the instructions in that case violated due process and no cases needed to be distinguished in reaching the conclusion that was reached. 905 F.2d at 1136. The more difficult question in *Falconer* was not the due process claim itself, but the question of whether there was a procedural default. Granting Flowers relief on his due process claim would not require application of a new rule of law.

For the foregoing reasons, Flowers is entitled to relief on his due process claim.

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to enter judgment in favor of petitioner and against respondent granting the petition for writ of habeas corpus and thereby releasing petitioner from custody unless within 90 days the state shall initiate proceedings to retry petitioner or otherwise proceeds to judgment in a manner consistent with this opinion.