Marvin FLOWERS, Petitioner–
Appellant Cross–Appellee,

v.

ILLINOIS DEPARTMENT of COR-
RECTIONS, Respondent–Appel-
lee Cross–Appellant.

Nos. 91–2330, 91–2415.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1992.

Decided May 7, 1992.

---

James B. Haddad, Northwestern University Legal Clinic, Anne Meyer (argued), Asst. Illinois State Appellate Defender, Chicago, Ill., for Marvin Flowers.

Terence M. Madsen, Asst. Atty. Gen., Steven J. Zick, Crim. Appeals Div., Chicago, Ill., for Illinois Dept. of Corrections in No. 91–2330.

Richard S. London, Asst. Atty. Gen., Terence M. Madsen, Asst. Atty. Gen., Steven J. Zick (argued), Crim. Appeals Div., Chicago, Ill., for Illinois Dept. of Corrections in No. 91–2415.

Before POSNER and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

An Illinois jury convicted Marvin Flowers of murder under a version of murder and voluntary manslaughter instructions found constitutionally deficient by this court in *Falconer v. Lane*, 905 F.2d 1129 (7th Cir.1990), and earlier found statutorily deficient by the Illinois Supreme Court in *People v. Reddick*, 123 Ill.2d 184, 122 Ill. Dec. 1, 526 N.E.2d 141 (1988). After exhausting his state remedies, Flowers petitioned for federal habeas corpus relief, claiming that his Fourteenth Amendment due process rights were violated by the written and oral instructions tendered to the jury and that his rights against double jeopardy, as guaranteed to him by the Fifth and Fourteenth Amendments, were violated in the state proceedings. The district court granted Flowers relief on the due process grounds, vacating his murder conviction, but denied relief on the double jeopardy ground, thereby allowing Illinois to retry Flowers within ninety days. Both Flowers and Illinois appealed, and their appeals were consolidated for our review. For the reasons that follow, we affirm.

I.

The facts of this case have been detailed extensively in several reported opinions including Judge Hart's comprehensive order below, *see United States ex rel. Marvin Flowers v. Illinois Department of Corrections*, 767 F.Supp. 880 (N.D.Ill.1991); consequently, we will not repeat them here except as necessary for our discussion. *See also People v. Flowers*, 192 Ill.App.3d

292, 139 Ill.Dec. 381, 548 N.E.2d 766 (1989) (ordering new murder trial) [*Flowers I*]; *People v. Flowers*, 138 Ill.2d 218, 149 Ill. Dec. 304, 561 N.E.2d 674 (1990) (reinstating murder conviction) [*Flowers II*]. In short, Marvin Flowers admitted that he killed his employer, Robert Murray, with a baseball bat, but maintained that the killing was either in self defense or constituted voluntary manslaughter rather than murder. The trial court determined that the evidence required jury instructions on both murder and voluntary manslaughter. R. 22–23; S.R. 1181–84. The instructions given to Flowers' jury, however, allowed the jury to convict Flowers of murder without regard to the presence or absence of those mitigating circumstances that distinguish voluntary manslaughter from murder, which has been held to violate the federal due process clause, *see Falconer v. Lane*, 905 F.2d 1129 (7th Cir.1990), and Illinois law, *see People v. Reddick*, 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988).

Flowers' case demonstrates the jury confusion to which *Falconer* and its progeny is addressed: initially Flowers' jury returned verdicts finding him guilty of *both* murder and voluntary manslaughter. S.R. 24. A judge, who had stepped in to receive the verdicts in the absence of the trial judge, ordered the jury to deliberate further, instructing them to return either the murder or the voluntary manslaughter verdict form, but not both. R. 24–27. The judge twice attempted to clarify the written instructions with little success (as we discuss *post*). Eventually, the jury returned a murder verdict and Flowers was sentenced to forty years for the offense of murder. R. 31–32. After exhausting his state remedies, Flowers petitioned for federal habeas relief. *See Flowers*, 767 F.Supp. at 884–85 (detailing Flowers' state court history).

## II.

■ Flowers asserts that he is entitled to federal habeas relief because the written and supplemental oral jury instructions violated his due process rights under the Fourteenth Amendment. First, Flowers correctly asserts that his written jury instructions violate federal due process. *Taylor v. Gilmore*, 954 F.2d 441 (7th Cir. 1992); *United States ex rel. Fleming v. Huch*, 924 F.2d 679 (7th Cir.1991); *Rose v. Lane*, 910 F.2d 400 (7th Cir.1990); *Falconer v. Lane*, 905 F.2d 1129 (7th Cir.1990). Illinois concedes this point, *see* Brief of Respondent–Appellee, Cross Appellant at 5–6, but argues that the judge's supplemental oral instructions cured any deficiency. After a thorough discussion of the judge's supplemental oral instructions, the district court concluded that the oral instructions "were not sufficient to cure the inherent confusion" in the written instructions. *Flowers*, 767 F.Supp. at 892. Our own view of the record reinforces the district court's conclusion: the judge's oral instructions further muddled an already confused jury through a series of misstatements and the use of undefined legal terminology such as "lesser included offense." R. 1078–81. Neither did the oral instructions correct the erroneous written instructions because the jury was not told that it could not convict Flowers of murder if it found that Flowers believed that he was justified in killing Murray, even if this belief was unreasonable.

■ Illinois next argues that even if the jury instructions violate federal due process, Flowers is nevertheless not entitled to collateral relief. Illinois contends that granting Flowers relief on his due process claim would constitute retroactive application of a new rule of criminal procedure in violation of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The district court held that *Falconer* did not announce a "new rule" under *Teague* and that Flowers was accordingly entitled to its application. Our recent decision in *Taylor* makes clear that the district court was correct. *Taylor*, 954 F.2d at 453 (holding that "Falconer is not a new rule"). Flowers is entitled to the benefit of *Falconer*.

■ Finally, we consider Illinois' argument that the errors in Flowers' jury instructions were harmless beyond a reasonable doubt. *See Rose v. Clark*, 478 U.S.

570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Considering that the Flowers' jury initially returned verdicts for both murder and voluntary manslaughter, Illinois' argument here seems particularly barren—although we note that Illinois itself does not spend much time pursuing this point.[1] Moreover, we have rejected similar contentions in the past in this context, *see Fleming*, 924 F.2d at 683; *Rose*, 910 F.2d at 403; *Falconer*, 905 F.2d at 1137, particularly where a defendant stakes his entire defense on a mitigating mental state rather than innocence. *Taylor*, 954 F.2d at 454. Our review of the record confirms the state trial judge's apparent belief, given that he tendered a voluntary manslaughter instruction to the jury, that the evidence presented at trial could support either a voluntary manslaughter verdict or a murder verdict. Consequently, we conclude that the error at Flowers' trial was not harmless beyond a reasonable doubt; he is entitled to federal habeas relief on his due process claim.

### III.

■ Flowers also seeks habeas corpus relief on the basis of an alleged violation of the Double Jeopardy Clause during his state proceedings. Flowers asserts that the jury's initial return of a voluntary manslaughter verdict constituted a murder acquittal because it reflected a finding, beyond a reasonable doubt, of the presence of those mitigating circumstances that reduce murder to voluntary manslaughter. The jury's simultaneous return of a murder verdict did not negate or contradict that finding, argues Flowers, because the faulty murder instruction did not require the jury to make a determination as to the presence or absence of the mitigating circumstances. Thus, Flowers insists, the Double Jeopardy Clause prohibits rejection of the jury's finding and resubmission of the murder issue to the jury.[2]

But Flowers was not expressly acquitted of murder; he cannot prevail unless the jury's alleged finding as to his mental state impliedly acquitted him of murder. *See Ohio v. Johnson*, 467 U.S. 493, 497–99, 104 S.Ct. 2536, 2539–41, 81 L.Ed.2d 425 (1984) (citations omitted). Flowers cannot meet his burden of demonstrating an implied acquittal because the confusing and ambiguous jury instructions in this case make it impossible to know what the jury intended when it returned both verdicts. *See ante* at 705–06; *Falconer*, 905 F.2d at 1136. Although Flowers was being tried for both murder and voluntary manslaughter, the judge never explained to the jury that voluntary manslaughter is not a lesser included offense of murder and that Flowers could not be guilty of both crimes simultaneously.[3] The jury may have believed that a murder conviction required or included a voluntary manslaughter conviction as well. Had the judge made clear to the jury the relationship between murder and voluntary

---

1. Flowers' motion to strike portions of Illinois' reply brief was carried with this case. We grant that motion only as to the portion seeking to strike Argument I from Illinois' reply brief as improper surrebuttal. We deny the remaining two counts of that motion (pertaining to arguments III and IV of Illinois' reply brief). We deem it unnecessary for Illinois to file a new brief with Argument I stricken.

2. The district court declined to accept Flowers' double jeopardy argument, reasoning that it should defer to the Illinois Supreme Court's resolution of this issue in *Flowers II*, 149 Ill.Dec. at 308, 561 N.E.2d at 678. *See Flowers*, 767 F.Supp. at 892. The Illinois Supreme Court determined that what Flowers' jury intended was speculative and that its initial verdicts were legally inconsistent so as to permit further deliberations, *see Flowers II*, 149 Ill.Dec. at 308,

561 N.E.2d at 678, a determination that the district court characterized as one of "fact and procedure." *Flowers*, 767 F.Supp. at 892. We need not decide whether the district court properly characterized the Illinois Supreme Court's determination as a factual one entitled to deference, *see* 28 U.S.C. § 2254, because we agree with its conclusion even if it is one of law or a mixed question of fact and law.

3. Indeed, Flowers does not dispute that a court may reject legally inconsistent verdicts without running afoul of the Double Jeopardy Clause, *see Hoffer v. Morrow*, 797 F.2d 348, 352 (7th Cir.1986); *Flowers*, 767 F.Supp. at 24 (and cases cited therein), or that these verdicts were inconsistent with the substantive law of Illinois. *See People v. Almo*, 108 Ill.2d 54, 90 Ill.Dec. 885, 889, 483 N.E.2d 203, 207 (1985).

manslaughter, then the potential for jury confusion that drives *Falconer* and its progeny may not have been present in this case. *See Falconer,* 905 F.2d at 1136 (instructions are faulty precisely because the murder instruction "read[s] as though voluntary manslaughter did not exist as a crime" although both murder and manslaughter are at issue); *Taylor,* 954 F.2d at 450 (noting while discussing *Falconer* that the instructions "[w]hen read together [are] susceptible to more than one reasonable interpretation").

Accordingly, while it is theoretically *possible* that the jury wanted to acquit Flowers of murder but felt compelled not to by the faulty instructions, it is also possible that the jury found Flowers guilty of murder and believed that that finding compelled them to find him guilty of voluntary manslaughter as well. Flowers' petition gives us no reason to favor his speculation. Consequently, we hold that Flowers has not met his burden on federal habeas review of demonstrating that he has been denied his rights guaranteed by the Double Jeopardy Clause.

\* \* \*

We AFFIRM the district court's grant of Flowers' petition for a writ of habeas corpus. The writ shall issue, thereby releasing Flowers from custody, unless the State of Illinois elects to retry him within ninety (90) days from the issuance of this Court's final mandate.

AFFIRMED.

EASTERBROOK, Circuit Judge, concurring.

We are at loggerheads with the Supreme Court of Illinois, which held in this very case (*People v. Flowers,* 138 Ill.2d 218, 149 Ill.Dec. 304, 561 N.E.2d 674 (1990)), that *People v. Reddick,* 123 Ill.2d 184, 122 Ill. Dec. 1, 526 N.E.2d 141 (1988), would not be applied to persons whose convictions became final before its rendition on June 20, 1988. *Falconer v. Lane,* 905 F.2d 1129 (7th Cir.1990), and *Taylor v. Gilmore,* 954 F.2d 441 (7th Cir.1992), create this conflict and support our decision today. Although I join the court's opinion (except for Part II), I write separately to explain why I would not have decided *Falconer* and *Taylor* in the same way. At oral argument counsel for Illinois informed us that these decisions undercut hundreds of convictions for murders that predate 1987 (when the state enacted a new murder statute), and that petitions for writs of habeas corpus seeking the benefit of these cases are being filed at the rate of two per week.

Most trial judges in Illinois use pattern jury instructions prepared by the Committee on Pattern Jury Instructions appointed by the Supreme Court of Illinois. The *Illinois Pattern Jury Instructions* § 27.01 (2d ed. 1981), recommended that when the accused in a murder prosecution raises self-defense, the jury should be instructed as follows:

To sustain the charge of murder, the State must prove the following propositions:

*First:* That the defendant performed the acts which caused the death of [the victim]; and

*Second:* That when the defendant did so, he intended to kill or do great bodily harm to [the victim]; or he knew that his acts would cause death or great bodily harm to [the victim]; or he knew that his acts created a strong probability of death or great bodily harm to [the victim]; and

*Third:* That the defendant was not justified in using the force which he used.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

To sustain the charge of voluntary manslaughter, the State must prove the following propositions:

*First:* That the defendant performed the acts which caused the death of [the victim]; and

*Second:* That when the defendant did so, he intended to kill or do great bodily harm to [the victim]; or he knew that his acts would cause death or great bodily

harm to [the victim]; or he knew that his acts created a strong probability of death or great bodily harm to [the victim]; and

*Third:* That when the defendant did so he believed that circumstances existed which would have justified killing [the victim]; and

*Fourth:* That the defendant's belief that such circumstances existed was unreasonable.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

Flowers' jury received a charge of this kind. (He was tried in 1980, but many judges used such instructions before the formula was enshrined in the pattern book.)

The first and second "propositions" of murder and manslaughter are identical. The third element of murder is similar to the fourth element of voluntary manslaughter. The third element of manslaughter is unique to that offense. Despite the overlap, these instructions do not include a rule of preference. They do not say, for example, that if the jury finds that the defendant had an actual, but unreasonable, belief in the need to apply deadly force, it should convict of voluntary manslaughter and stop.

*Reddick* considered whether this pair of instructions is appropriate. The court concluded that it is not. First, the court held, once the defendant satisfies a burden of production on the subject of justification, a conviction for murder is proper only if the prosecution shows beyond a reasonable doubt that the accused lacked a belief in the justification for his deeds. Second, the court deleted the belief in justification as an element of manslaughter, so that a person who has either no belief in justification, or an objectively unreasonable one, will be convicted of manslaughter if the prosecution fails to carry its burden on the murder charge. To obtain an acquittal on voluntary manslaughter, the defendant must carry the burden of showing an actual, and objectively reasonable, belief in justifica-

tion. These adjustments ended the overlap between murder and voluntary manslaughter.

The court did not reach its conclusion in *Reddick* under compulsion of the statute. The law that governed between 1961 and 1987 defined murder this way: "A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death: (1) He either intends to kill or do great bodily harm to that individual or another ...; or (2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or (3) He is attempting or committing a forcible felony other than voluntary manslaughter." Ill. Rev.Stat. ch. 38 ¶ 9–1(a). The pattern jury instructions track the statutory elements. *Reddick* added the fourth, negation-of-belief, requirement, and allocated the burdens of persuasion, to distinguish murder from voluntary manslaughter in self-defense cases.

*Reddick* reads like a statutory decision. It discusses state law and when specifying the burdens of persuasion says that "this issue is controlled by section 3–2 of the Criminal Code of 1961", 122 Ill.Dec. at 5, 526 N.E.2d at 145. The court wraps up, 122 Ill.Dec. at 6, 526 N.E.2d at 146: "Thus, under the 1961 Code ...". Our opinion in *Falconer* came two years later. We noted that Illinois interpreted its law so that an actual, but objectively unreasonable, belief in the need to use deadly force calls for a manslaughter rather than a murder conviction. Yet "[t]he murder instruction ... read as though voluntary manslaughter did not exist as a crime. No matter how clearly either the State or the defense proved the existence of the mitigating 'manslaughter defenses,' the jury could nevertheless return a murder verdict in line with the murder instruction as given. Far from setting aside an interpretation of state law by state courts, the district court's decision [issuing a writ of habeas corpus] effectuated the holding of *Reddick* through the vehicle of the Due Process Clause." 905 F.2d at 1136. The constitutional problem, in other words, was that the pattern instruc-

tion did not represent the authentic state law. See also *Rose v. Lane*, 910 F.2d 400 (7th Cir.1990); *Fleming v. Huch*, 924 F.2d 679 (7th Cir.1991). The panel did not explain why 28 U.S.C. § 2254, which surely does not allow a federal court to "set[ ] aside an interpretation of state law by state courts", does authorize it to "effectuate[ ]" an interpretation of state law by the state courts. The writ may issue only when the custody violates *federal* law (including the Constitution). E.g., *Estelle v. McGuire*, —— U.S. ——, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984); *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982); *Rose v. Hodges*, 423 U.S. 19, 21–22, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975); *Brecht v. Abrahamson*, 944 F.2d 1363, 1366 (7th Cir.1991); *Bates v. McCaughtry*, 934 F.2d 99, 102 (7th Cir.1991); *Bell v. Duckworth*, 861 F.2d 169 (7th Cir.1988); *Jones v. Thieret*, 846 F.2d 457, 459 (7th Cir.1988). That a state court violated state law "is no part of a federal court's habeas review of a state conviction." *Estelle*, 112 S.Ct. at 480.

Next the Supreme Court of Illinois had to decide whether to apply *Reddick* retroactively. It accepted our view that *Reddick* must have been a constitutional decision (although it did not say why, any more than we had). Treating the decision as constitutional summoned up *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), which holds that new constitutional decisions do not apply retroactively on collateral review unless they place conduct beyond the power of the state to penalize or establish rules fundamental to a free society. *Reddick* did not do either of these things; rather it specified the dividing line between murder and voluntary manslaughter in Illinois. So the court had to decide whether *Reddick* created a new rule. It answered yes: "Though *Reddick* was doctrinally consistent with existing laws regarding affirmative defenses and burdens of proof, it was the first time this court applied these legal principles to the specific situation of the murder and voluntary manslaughter instructions.... [L]ong-standing practice in the trial courts was to instruct the jury on murder and voluntary manslaughter consistent with the Illinois Pattern Jury Instructions. This court also did not invalidate these instructions in other cases it reviewed prior to *Reddick*." 149 Ill.Dec. at 313, 561 N.E.2d at 683.

Two turns for Illinois, and then a second turn for this court when *Taylor* considered the retroactive application of *Reddick*. The first step in applying *Teague* is to characterize the rule. This produced something of an embarrassment, for characterizing the rule as "effectuat[ing] the holding of *Reddick* through the vehicle of the Due Process Clause" shows that we do not have a constitutional rule at all. *Taylor* therefore abandoned the rationale of *Falconer* and substituted a new one: the defendant is entitled to be free of instructions so vague and confusing that the jury cannot make a rational decision. 954 F.2d at 448–50. That is an old rule, long predating *Reddick*. So, we concluded, the parties had been mistaken in asking us to decide whether *Reddick* applied retroactively. *Id.* at 450. The only question was whether the instructions satisfied the established requirement of clarity. Concluding that they did not, we directed the district court to issue a writ of habeas corpus.

*Taylor* avoids confounding a violation of state law with a violation of the Constitution. But in rescuing *Falconer* from a charge of usurpation of power, we turned that case and *Reddick* on their heads. For their objection to the pattern instructions was not their vagueness but their clarity. These instructions tell the jury that a person who slays another, having an objectively unreasonable belief in justification, is guilty of both murder and voluntary manslaughter. If however the defendant lacks any belief in the justification of his acts, the jury is to convict of murder but not voluntary manslaughter (for the instructions say that such a belief is an element of manslaughter but not of murder). The instructions tell a jury precisely what to do.

According to *Reddick*, they tell the jury the *wrong* thing to do, for Illinois wants a rule in which an actual, but unreasonable, belief in justification reduces the crime to voluntary manslaughter. It was the substance of the instructions, and not any lack of clarity, that underlay both *Reddick* and *Falconer*. Flowers' jury did just as instructed if it found that he had an actual, but objectively unreasonable, belief in justification: first it returned guilty verdicts on both offenses, and then when told to choose one it picked the more serious. Where is the confusion?

The perspective I have offered—that the pattern instruction is clear but unfortunate—follows scholarly commentary on these instructions. See James B. Haddad, *Allocation of Burdens in Murder–Voluntary Manslaughter Cases: An Affirmative Defense Approach*, 59 Chi.-Kent L.Rev. 23 (1982); Haddad, *Second Degree Murder Replaces Voluntary Manslaughter in Illinois: Problems Solved, Problems Created*, 19 Loyola U.L.J. 995 (1988); Timothy P. O'Neill, *"With Malice Toward None": A Solution to an Illinois Homicide Quandary*, 32 DePaul L.Rev. 107 (1982). Professor Haddad, who represents Flowers, implored the Supreme Court of Illinois to deal with the problem by requiring the prosecutor to prove the absence of a belief in justification in order to obtain a conviction for murder, while making justification an affirmative defense to manslaughter charges. This is what the Court did. And Professor Haddad's principal argument to us is that Flowers' murder conviction violates the double jeopardy clause *precisely because the instructions are clear*. A jury that finds the accused guilty of both murder and voluntary manslaughter *must* have concluded that he possessed an actual, but unreasonable, belief in justification. *Reddick* then calls for judgment on the manslaughter verdict rather than the murder verdict. This is a solid argument—although I think under state law rather than the double jeopardy clause—but it is inconsistent with the rationale *Taylor* constructs for applying *Falconer* retroactively.

One can of course treat any substantive error as scrambled communication. The communicative failure is that the instructions did not convey the correct substance. They were confusing not by an internal benchmark, but by reference to the authentic state law established in *Reddick*. Repackaging the substantive argument in this way adds nothing, however. Every substantive defect may be thus recast, with the result that every error of state law in a jury instruction violates the Constitution as well—an outcome that § 2254 does not tolerate.

*Falconer* and *Taylor* jointly show the ease with which an error of state law becomes a violation of the Constitution. They show as well the allure of the process. Convicting a man of murder, when his real crime is manslaughter, does not sit easily. Judges strain to provide redress. Holding the line between state and federal problems is difficult given the reluctance of every judge to see a person convicted of the wrong crime. Cases provide many models for transmuting errors of state law into violations of the Constitution. *Falconer* and *Taylor* illustrate two of the methods. There are many others. The Constitution requires the prosecution to prove its case beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). If the state court does not frame the instructions accurately under state law, how can the jury have found every element beyond a reasonable doubt? See *Cole v. Young*, 817 F.2d 412 (7th Cir.1987); but see *id.* at 435–40 (dissenting opinion). *Winship* implies that the state must bring forth evidence from which a sane factfinder could conclude, beyond a reasonable doubt, that the accused committed the offense. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Does it not then follow that any important error violates the Constitution? If the trial judge misunderstands state law, how can the jury have made the necessary findings? See *Fagan v. Washington*, 942 F.2d 1155 (7th Cir. 1991); but see *Bates v. McCaughtry*, 934 F.2d 99 (7th Cir.1991). All of these methods come to the same thing: disparity be-

tween the "real" state law and the rules applied in a particular case violates the Constitution. Yet if these and cognate methods are indeed appropriate, then the many cases telling federal courts to distinguish between violations of state and federal law are nothing but hot air. The distinction is vital but trivial, governing only when, as in *Estelle v. McGuire*, the judge is so careless as to *say* that the writ must issue to redress an error of state law.

Section 2254 calls on courts to distinguish state from federal law, and it must suppose that distinction is possible. Federal courts promote justice by ensuring that states respect constitutional rules to which they may be hostile; there is no comparable role in helping states to enforce those rules they have adopted on their own. Courts have come to recognize that an extended review, through a cascade of courts, carries high costs, and that it is better to tolerate the occasional error than to pursue the impossible dream of correcting them all. E.g., *Coleman v. Thompson*, — U.S. —, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); *McCleskey v. Zant*, — U.S. —, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Pursuing that mirage entails great costs. See generally Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv.L.Rev. 441 (1963). Our case illustrates these costs, some obvious and some subtle. The obvious costs stem from delay and multiple litigation. We order new trials for a large class of litigants who did not object to the instructions at trial or on direct appeal. Many of these trials will be less accurate, given the passage of time, than were the original ones with defective instructions. Sometimes retrial will be impossible.

The subtle costs are also more insidious. The Supreme Court of Illinois decided to improve the mesh between murder and manslaughter, thinking that prospective application meant bearable costs. We reply, in effect, that whenever a state court holds that a jury instruction misstates the elements of an offense or the burden of persuasion, it must afford new trials to everyone affected by the old instruction. Judges of a state's highest court must now think

thrice before they find a flaw in a pattern jury instruction! From now on, prudence lies in perpetuating dubious instructions rather than improving them. I doubt that defendants gain when federal judges impel their state cousins to pusillanimous passivity.

Available tools are too numerous, and the urge to use them too strong, for judges at our level to bring order. Still, I offer a suggestion: why not distinguish state from federal law by *ignoring* state law? Assume, for example, that the instructions given the jury are accurate and ask: Does the Constitution prevent a state from convicting a person on such instructions? Cases such as *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), illustrate situations in which the answer is yes. But if a state could choose to do something—choose, for example, to make self-defense an affirmative defense to murder, see *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987)—then the federal inquiry is over; whether the state has indeed so chosen is a question of its domestic law. To put this differently, we should assume that the judgment under examination was rendered by the state's highest court, which declared: "Yes, these events are exactly what our law requires." Here we should assume that *Reddick* came out the other way, that the Supreme Court of Illinois ordered trial judges to keep using the pattern jury instructions. Would there then be a constitutional flaw?

Start with murder, for that is the crime of which Flowers was convicted. The instructions told the jury to convict Flowers of murder if it found that the prosecution had established beyond a reasonable doubt (1) that Flowers killed Murray with the baseball bat, (2) that Flowers intended to slay Murray or do him serious harm, and (3) that Flowers lacked justification for this use of deadly force. This is a standard definition, in use before the United States became a nation. It required the prosecu-

tion to show more than the constitutional minimum. (Element 3 could be an affirmative defense.) Now add the voluntary manslaughter instruction. This does not alter any of these elements or relieve the state of its burden. Quite the contrary, the voluntary manslaughter instruction tracked the elements of murder and added a fourth. Overlapping elements are common. Even identical crimes carrying different penalties do not create constitutional problems. *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). Does the Constitution forbid charging the jury on overlapping or even identical offenses? Surely not. But that is all that happened to Flowers, if we delete all state-law issues by assuming that *Reddick* came out the other way.

Natural law does not compel states to make "manslaughter" a lesser included offense of "murder," rather than the other way around. Lexicographers' preference for the ranking of "murder" and "manslaughter" is not binding on the states in the name of the Constitution, which allows words no talismanic quality. Flowers received a trial at which the jury found him guilty of elements constituting murder and received a sentence (40 years' imprisonment) that may be meted out to one who commits such acts. Perhaps in light of *Reddick* the Governor of Illinois should commute this conviction to manslaughter; such questions are for the officials charged with deciding issues of state law, as we are not. *If* Illinois wishes to use these instructions, it may; *whether* it wishes to do so is none of our business.