**UNITED STATES of America, ex rel. Donald EVERETTE, Petitioner,**

v.

**Thomas ROTH, Warden, Sheridan Correctional Center, Illinois Department of Corrections, and Roland W. Burris, Attorney General of the State of Illinois, Respondents.**

No. 92 C 3098.

United States District Court, N.D. Illinois, E.D.

Nov. 16, 1992.

Glenn E. Heilizer, Joel J. Africk, Jenner & Block, Chicago, IL, for petitioner.

Thomas Lee Ciecko, Terence Madsen, Illinois Atty. General's Office, Chicago, IL, for respondents.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

On May 29, 1987, a Cook County jury found petitioner Donald Everette guilty of murder for the shooting death of Johnny Island. At trial, Everette admitted shooting Island, but maintained that he had drawn his gun in self-defense and, further, that the gun had discharged accidentally. The trial court instructed the jury that the accidental firing of a gun could not constitute murder, but the court refused to instruct the jury on self-defense or voluntary manslaughter.

Before us now is Everette's petition for writ of *habeas corpus*. He contends that the trial court's refusal to instruct the jury on self-defense and voluntary manslaughter amounted to a directed verdict against him on those defenses and violated his federal constitutional rights to trial by jury and due process of law. Respondents Thomas Roth and Roland Burris contend that the question of whether a particular jury instruction concerning a defense was appropriately given or denied is a question of state law and that federal courts may not review a state court's resolution of that question. We agree with petitioner and reject respondents' blanket rule. For the following reasons, we grant petitioner's writ of *habeas corpus*.

## BACKGROUND

### A. *The Illinois Criminal Code* [1]

Under the Illinois Criminal Code a person is guilty of murder if that person kills another "without lawful justification," and intends to cause death or great bodily harm. Ill.Ann.Stat. ch. 38, § 9–1(a)(1). Even a person who kills without intending to cause death or great bodily harm can be guilty of murder if the person knows that the acts will result in one of those outcomes, *id.*, or if the person knows that there is a "strong probability" that the acts will result in one of those outcomes. *Id.* at § 9–1(a)(2). The Code also provides, however, that a person is guilty of no crime at all if the person kills intentionally but does so in self-defense. *Id.* at § 7–1. The Code states that a person is justified in using lethal force if, but only if, that person reasonably believes that lethal force "is necessary to prevent imminent death or great bodily harm" to himself or herself or another person, or to prevent "the commission of a forcible felony." *Id.* (Among the crimes designated as felonies are robbery, *id.* at § 18–1; arson, *id.* at § 20–1; kidnapping, *id.* at § 10–1; and rape, *id.* at § 11–1.) The Code further provides that a person who uses lethal force in the unreasonable but honest belief that such force is necessary to prevent death, great bodily harm, or the commission of a forcible felony commits the crime of "voluntary manslaughter," not murder. *Id.* at § 9–2.

### B. *Facts and Procedural History*

At petitioner's trial the prosecution called Edward Jeffries, a friend of Johnny Island's who had been drinking with Island and a man named Donnell on the night of the shooting. Jeffries testified that on November 1, 1985, he, Donnell and Island were sharing a six-pack of beer in the breezeway of an apartment building in the Stateway Gardens public housing project at 3835 South Federal Street, Chicago, Illinois, when petitioner walked past them toward the mailbox area. As Everette checked his mail, Island teased him about "a prior incident that happened to him." According to Jeffries, Everette retorted that, if he wanted to, he could "get" Island. Jeffries recalled that Island then walked up to Everette and called him a name, but that Everette ignored Island and headed up a ramp leading to the apartments.

Jeffries testified that Everette came back down the ramp about five minutes later, running toward the three men. Island started to bolt away but, just as Everette reached the mailbox area and drew his revolver, Island slipped. Everette shot Island in the back. Jeffries told the jury that Everette and Island had been standing between seven and ten feet apart when the gun went off. According to Jeffries, Everette had both arms extended in front of him when he fired the gun. Jeffries testified that when he asked Everette why he had shot Island, Everette gave no answer and walked back up the ramp.

Testifying on his own behalf, Donald Everette offered a different version of the events leading up to the shooting. He said that when he went to his mailbox on the night of the shooting, he heard Jeffries say, "There he is." Island then said, "We aren't going to start nothing, cause [sic] that is over with." Everette testified that he understood Island to be referring to a dispute that had been smoldering since June, when Island hit Everette over the head with a bottle and knocked him down. Everette recalled that Island implicitly had threatened to hit him again later that summer. In August, Everette testified, he had been waiting at a bus stop when Island approached; Island circled Everette and, holding a one-gallon wine jug in his hand, sarcastically apologized for the fight in June. The bus arrived and Everette boarded it before anything else could happen.

Everette testified that on the night of the shooting, after he had removed three letters from his mailbox and had started to leave, he was confronted by Island, Jeffries and a third person. The three men at-

---

**1.** All references to the Illinois Criminal Code in this opinion are to the Code as it read on the date of the acts at issue.

tempted to go through his pockets, but he was able to make his way past them and went upstairs, alone, to his apartment. After he was inside the apartment, he testified, he noticed that two of the three letters from his mailbox were not addressed to him. According to Everette, he decided to go out for dinner some time later that evening and took the two misdelivered letters with him. He told the jury that, as a precaution, he also took his revolver because he feared that Island and his friends were waiting for him downstairs. He testified that he was not planning to shoot anyone when he left his apartment.

Everette testified that all three men were in the mailbox area when he returned downstairs. According to Everette, Jeffries said, "There he is again," and Island loudly asked, "What are you doing back down here?" Everette testified that he turned to Island and saw him poised in what Everette took to be a striking position. According to Everette, Island seemed "frantic." Everette testified that Island was holding a beer can or some other object in his hand and that Jeffries was standing behind him yelling, "Hit him, hit him." At that point, Everette recalled, he felt "frightened and scared." Fearing for his life and hoping to "scare" Island away, he pulled out his gun. He told the jury that he took two steps back and that Island started to run away, but that on the second backward step his right shoulder bumped into the mailboxes, causing the gun to fire. He insisted that he had not intended to fire the gun. Everette also stated that he is legally blind—he had difficulty making out objects and faces.

Everette's account was bolstered by the testimony of a neighbor who said she had seen the victim acting drunk and searching Everette's pockets on the evening of the shooting. Everette's testimony also was corroborated in part by statements he himself had made to the detective who had arrested him and to an assistant state's attorney who had interrogated him shortly after he was taken into custody. The prosecution used Everette's prior statements both in its case-in-chief and to impeach him. The basic sequence of events described in his various accounts was the same, as was his emphasis on his fear for his safety, but the earlier versions did not elaborate on his decision to carry a gun downstairs for protection, and, more significantly, they contained no assertion that the gun had discharged accidentally.

At the close of evidence the trial court ruled, over defense objection, that the jury could not be instructed on self-defense or voluntary manslaughter because Everette had testified that he had not intended to fire the gun. The court instructed the jury on the elements of murder, omitting reference to the "without lawful justification" element, and explained that an accidental shooting cannot constitute murder. The jury rejected the defense's accident theory and convicted Everette of murder.

The Illinois Appellate Court reversed Everette's conviction and ordered a new trial. *People v. Everette*, 187 Ill.App.3d 1063, 135 Ill.Dec. 472, 543 N.E.2d 1040 (1st Dist. 1989), *rev'd*, 141 Ill.2d 147, 152 Ill.Dec. 377, 565 N.E.2d 1295 (1990). The court found that Everette's testimony had supported the defense theories of self-defense and voluntary manslaughter, and that the jury should have been instructed on them.

The State of Illinois appealed to the Illinois Supreme Court, contending that a defendant may not put forward inconsistent defenses when one is based on an accident theory and the other is based on a self-defense or voluntary manslaughter theory. The state also asserted that even if the two types of defenses were not mutually exclusive, Everette could not point to any evidence in the record of his case to support instructions on self-defense or voluntary manslaughter. In response, Everette argued that it is a "basic proposition that a criminal defendant is entitled to a jury instruction on self-defense when there is some evidence in the record that, if believed by a jury, would support a self-defense claim." Asserting that even a "slight amount of evidence" would suffice, Everette suggested to the court that there had been ample evidence in the record to warrant a self-defense instruction in his

case and that the Appellate Court's decision was therefore proper.

The Illinois Supreme Court agreed with Everette insofar as it held that an accident defense does not preclude instructions on self-defense or voluntary manslaughter, but the court disagreed with him on whether there had been sufficient evidence in the record to warrant those instructions in his case. The Supreme Court reversed the Appellate Court, reinstated the conviction for murder and remanded the case to the Appellate Court for proceedings on unresolved issues. *People v. Everette*, 141 Ill.2d 147, 152 Ill.Dec. 377, 565 N.E.2d 1295 (1990). The Supreme Court explained that Everette's testimony that he had not been touched or physically threatened on the night of the confrontation left the court "to wonder how [Everette] could have believed that any force, let alone *deadly force*, was necessary to prevent harm to himself." *Id.* 152 Ill.Dec. at 382, 565 N.E.2d at 1300 (emphasis in original). "We fail to see," said the court, "how the victim's hand, held at waist level and angled behind his back, could have been perceived as a threat to [Everette] and we are equally hesitant to characterize the victim's stance as a 'striking position.'" *Id.* After noting that the victim had been moving away from Everette when he was shot, and that the bullet had hit him in the back, the court concluded that Everette "'could not have feared for his life, even unreasonably.'" *Id.* at 383, 565 N.E.2d at 1301 (quoting *People v. Everette*, 135 Ill.Dec. at 482, 543 N.E.2d at 1050 (McNamara, J., dissenting)).

Following the Illinois Supreme Court's decision, Everette filed a petition for rehearing, arguing that the court had "applied improperly the minimal legal standard for submitting self-defense issues to the jury," and that, as a result, Everette had been deprived of his "fundamental constitutional rights under the Sixth and Fourteenth Amendments." The Illinois Supreme Court denied Everette's petition for rehearing.

On September 27, 1991, the Illinois Appellate Court denied all remaining grounds of appeal and affirmed Everette's convic-

tion. 220 Ill.App.3d 453, 163 Ill.Dec. 158, 581 N.E.2d 109 (1st Dist.1991). Everette has made no collateral attacks on his conviction in state court. The petition before us now is his first petition for writ of *habeas corpus* in federal court.

## DISCUSSION

### A. *Whether Petitioner's Federal Claims were Presented Fairly in State Court*

■ "Before considering a petition for habeas corpus on its merits, a district court must make two inquiries—whether the petitioner exhausted all available state remedies and whether the petitioner raised all his claims during the course of the state proceedings." *Henderson v. Thieret*, 859 F.2d 492, 496 (7th Cir.1988), *cert. denied*, 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989). In this case respondents concede that petitioner has exhausted his state court remedies. They contend, however, that he failed to present his federal constitutional claims in state court and thereby failed to provide the state courts with a fair opportunity to correct any constitutional error that may have been made.

■ We find that Everette's Sixth and Fourteenth Amendment claims were presented fairly to the Illinois courts. The fair presentment rule is not "hypertechnical" and is satisfied if the state courts have been given a "'fair opportunity to apply constitutional principles and correct any constitutional errors committed by the trial court.'" *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir.1992) (quoting *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 453 (7th Cir.1984)). The Illinois Supreme Court had such an opportunity. In Everette's first brief to the Illinois Supreme Court, he alleged "'a pattern of facts'" typical of mainstream Sixth and Fourteenth Amendment litigation, and he used "'terms so particular'" as to evoke those rights in the mind of any reader trained in the law. *Verdin*, 972 F.2d at 1473 (quoting *Daye v. Attorney General of New York*, 696 F.2d 186, 194 (2d Cir.1982) (*en banc*)). Although he cited no federal authority, the arguments he made, and the reasoning contained in the Illinois cases he

cited, such as *People v. Robinson*, 163 Ill. App.3d 754, 114 Ill.Dec. 898, 516 N.E.2d 1292 (1st Dist.1987), *app. denied*, 119 Ill.2d 570, 119 Ill.Dec. 394, 522 N.E.2d 1253 (1988), should have alerted the Illinois Supreme Court to the federal constitutional nature of his claims. In fact, the state claims he presented were "functionally identical" to the federal claims which he now raises more explicitly. *Falconer v. Lane*, 905 F.2d 1129, 1134 (7th Cir.1990). *See also Taylor v. Kentucky*, 436 U.S. 478, 482 n. 10, 98 S.Ct. 1930, 1933 n. 10, 56 L.Ed.2d 468 (1978).

We do not believe that the Illinois Supreme Court could have missed Everette's basic point, but even if it had, any misunderstanding would have been corrected once Everette had filed his petition for rehearing, for in that petition he explicitly alleged that his Sixth and Fourteenth Amendment rights had been violated, and he cited a number of federal cases in support of his position. Everette's federal claims have become more detailed now that he is in federal court, but the record reveals that those claims were presented fairly to the Illinois Supreme Court and that the Illinois Supreme Court rejected them. Everette is entitled to raise them now.

**B.** *Whether the Failure to Instruct a Jury on a State Law Defense can Violate Federal Constitutional Law*

 In a criminal trial the defendant has the right to an assessment by a jury of all factual issues relating to the determination of guilt or innocence. " '[A] judge may not direct a verdict of guilty no matter how conclusive the evidence.' " *Connecticut v. Johnson*, 460 U.S. 73, 83, 103 S.Ct. 969, 975, 74 L.Ed.2d 823 (1983) (quoting *United Brotherhood of Carpenters and Joiners of America v. United States*, 330 U.S. 395, 408, 67 S.Ct. 775, 782, 91 L.Ed. 973 (1947)). The trial court must instruct the jury that the state bears the burden of proving each element of the crime beyond a reasonable doubt, and the court must state each of those elements to the jury. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

In some respects the constitutional requisites for jury instructions differ when the instructions concern affirmative defenses rather than elements of the alleged crime itself. For example, although the prosecution always bears the burden of proving all elements of a crime beyond a reasonable doubt, the Supreme Court has ruled that individual states may place the burden of proof on the defendant to prove affirmative defenses such as self-defense, *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), or insanity. *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). In addition, although the trial court always must give an instruction on every element of a crime, the defendant has no right to an instruction on an affirmative defense unless there is evidence in the record to support that defense. Once the defendant has alleged a defense and has offered evidence to support it, however, the distinction between an element and an affirmative defense is "an insignificant distinction." *Taylor v. Gilmore*, 954 F.2d 441, 453 (7th Cir.1992), *cert. granted*, —— U.S. ——, 113 S.Ct. 52, 121 L.Ed.2d 22 (1992). The distinction can disappear entirely in Illinois homicide cases, for, under the Illinois Criminal Code, an element of the crime of murder is that the killing be "without lawful justification." Ill.Ann.Stat. ch. 38, § 9-1(a). To prove that a murder has occurred, the state must prove that no "justifiable" use of force asserted by the defendant was involved. *See id.* at §§ 7-1, 7-14.

 Because the result of a trial court's refusal to give an instruction on a defense is "trial by the judge, rather than trial by a jury, both Sixth Amendment and Due Process rights may be at issue" when a defense instruction is denied. *United States ex rel. Peery v. Sielaff*, 615 F.2d 402, 404 (7th Cir.1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980). Thus, a defendant is constitutionally entitled to clear instructions concerning any defense for which there exists evidence sufficient to allow a reasonable jury to find in his or her favor. *See Flowers v. Illinois Department of Corrections*, 962 F.2d 703, 705–06 (7th Cir.1992) (finding that confus-

ing instructions on self-defense and voluntary manslaughter violated due process because they allowed the jury to convict defendant of murder "without regard to the presence or absence of those mitigating factors that distinguish voluntary manslaughter from murder"); *Taylor*, 954 F.2d at 453 (holding that a murder verdict reached by a jury that had not been instructed to consider the defendant's manslaughter defenses violated due process); *Falconer v. Lane*, 905 F.2d 1129, 1136 (7th Cir.1990) (reversing a conviction for murder because portions of the jury instructions "read as though voluntary manslaughter did not exist as a crime"). A defendant's right to clear instructions on defenses supported by evidence is not diminished even if the evidence is weak, inconsistent, or of doubtful credibility. *United States v. Hillsman*, 522 F.2d 454, 459 (7th Cir.1975), *cert. denied*, 423 U.S. 1035, 96 S.Ct. 570, 46 L.Ed.2d 410 (1975). *See also United States v. Creamer*, 555 F.2d 612, 616–17 (7th Cir.1977), *cert. denied*, 434 U.S. 833, 98 S.Ct. 118, 54 L.Ed.2d 93 (1977).

■ *Flowers, Taylor,* and *Falconer* all addressed the adequacy of instructions that referred to proffered defenses but failed to explain that there could be no finding of murder if the jury accepted one of them. Thus, those three cases differ slightly from the one before us, for here the proffered defenses were not mentioned to the jury at all. As *Taylor* observed, however, the rule requiring clear instructions on proffered defenses is based on the premise that the complete failure to apprise the jury of a defense can constitute constitutional error. 954 F.2d at 452–53. Jury instructions are constitutionally deficient if they (1) do not mention affirmative defenses that are supported by the evidence; or (2) do not state that the jury may not convict the defendant of murder without rejecting those defenses. *Id. See also United States ex rel. Means v. Solem*, 646 F.2d 322 (8th Cir. 1980) (holding that state trial court's refusal to instruct on self-defense violated petitioner's right to due process); *Zemina v. Solem*, 573 F.2d 1027 (8th Cir.1978) (holding that state trial court's refusal to instruct on justification, excuse, and self-de-

fense violated petitioner's Sixth and Fourteenth Amendment rights). The wisdom of the rule requiring clear instructions on supported defenses is well illustrated in Illinois homicide cases. Under the Illinois Criminal Code, a homicide committed under circumstances that constitute self-defense or voluntary manslaughter "is no more a murder than a homicide committed without the intent to kill." *Taylor*, 954 F.2d at 453.

When a trial court refuses to give instructions on affirmative defenses, it effectively tells the jurors that they must ignore any circumstances that they might perceive as justifying the defendant's acts or diminishing the defendant's culpability. The jurors often are forced to choose between acquitting the defendant and violating their oaths to uphold the law as it is told to them, or convicting the defendant and causing the defendant to be punished for a crime he or she did not commit. Giving jurors that choice can be exceedingly unfair to a defendant like Everette, who claims that his acts were justified or, if not, that his acts constituted a crime much less serious than the one charged. *See Keeble v. United States*, 412 U.S. 205, 212–13, 93 S.Ct. 1993, 1997–98, 36 L.Ed.2d 844 (1973) (noting unfairness attendant to a trial court's refusal to instruct a jury on lesser-included offenses).

In Everette's case, the trial court withheld instructions on both self-defense and voluntary manslaughter and omitted reference to the "without lawful justification" element of murder. The court's ruling was tantamount to a directed verdict on two of defendant's defenses, for they were removed entirely from the jury's consideration. *See Leach v. Kolb*, 911 F.2d 1249, 1256 (7th Cir.1990), *cert. denied*, 498 U.S. 972, 111 S.Ct. 441, 112 L.Ed.2d 424 (1990); *Peery*, 615 F.2d at 404. The Illinois Supreme Court upheld the trial court's decision, on the rationale that there was no evidence in the record to support a finding either of self-defense or of voluntary manslaughter. The Supreme Court was correct insofar as it ruled that a defendant is not entitled to instructions on a defense if there is no evidence in the record to sup-

port that defense. *Leach*, 911 F.2d at 1256–58. Trial court decisions not to instruct on particular defenses often have been upheld for that reason. *See, e.g., United States ex rel. Bacon v. De Robertis*, 728 F.2d 874, 875 (7th Cir.1984), *cert. denied*, 469 U.S. 840, 105 S.Ct. 143, 83 L.Ed.2d 82 (1984) (finding no error in refusal to instruct on manslaughter because there had been no evidence to support such an instruction); *Peery*, 615 F.2d at 407 (same). *See also Taylor*, 954 F.2d at 451 (noting that the outcomes in *Bacon* and *Peery* comported with due process because there had been no evidence in the records of those cases to support the proffered defenses).

■ Everette does not question the legal standard applied by the Illinois Supreme Court. Rather, he contends that the court misread the trial record and overlooked critical evidence when it applied that standard to his case. We agree.

There was sufficient evidence in the record to support instructions on both self-defense and voluntary manslaughter. Everette testified that when he returned downstairs from his apartment he was confronted by Island and his two hostile companions. He said that when he shot Island he thought that an attack was imminent: Island had appeared frantic and drunk; Island had spoken to Everette in a loud, perhaps threatening, voice, asking what Everette was doing there; with Jeffries standing behind yelling, "Hit him, hit him," Island had taken what the visually-impaired Everette perceived to be a striking position; Island had been holding an object in his hand, possibly a beer can (which, if opened, could be used as a sharp implement or, if unopened, could be used the way one might use a brick or a rock); Island had assaulted or threatened Everette twice in the previous few months, and he and his friends had attempted to rob Everette earlier that night; Island and his companions outnumbered Everette three to one.

The Illinois Supreme Court stated that Everette admitted that he had not been touched or physically threatened on the night of the shooting. 152 Ill.Dec. at 382,

565 N.E.2d at 1300. In fact, Everette said that he had been assaulted physically earlier that night and that, in light of his past experiences with Island, he thought Island was about to attack him. The Illinois Supreme Court explicitly discounted Everette's testimony that he felt threatened when the victim held his hand at waist level, angled behind his back. *Id.* The court also was "hesitant to characterize the victim's stance as a 'striking position.'" *Id.* Perhaps, as Everette claims, the position he described is consistent with preparation to throw an uppercut punch. Perhaps it is not. Everette testified that Jeffries had been yelling at Island to "hit him, hit him." Had the jury believed that testimony, then it also might have concluded that Jeffries shared Everette's belief that Island was poised to throw a punch. The real issue from our perspective, however, is not what kind of punch could be thrown from that stance, if any, but what kind of factfinder should resolve the factual dispute Everette's testimony created. Even though Everette stated explicitly that he raised his gun because he feared for his life, the Illinois Supreme Court concluded that he could not have feared for his life, either reasonably or unreasonably. *Id.* at 383, 565 N.E.2d at 1301. Regardless of the strength of the evidence, credibility judgments such as that should not be made either by trial judges or by judges sitting in review.

The prosecution had the burden of proving its case beyond a reasonable doubt. Given the evidence presented, we conclude that Everette might have been able to persuade a properly-instructed jury that his acts *might have* constituted self-defense or voluntary manslaughter. In denying Everette the jury instructions he sought, the trial court deprived him of his rights to due process and trial by jury. Although the trial court believed that its ruling was required by Illinois law, it unintentionally brought about a "fundamental miscarriage of justice." *Nichols v. Gagnon*, 710 F.2d 1267, 1272 (7th Cir.1983), *cert. denied*, 466 U.S. 940, 104 S.Ct. 1918, 80 L.Ed.2d 465 (1984).

C. *Whether the Findings of the Illinois Supreme Court are Entitled to Deference*

■ When federal district courts are presented with petitions for writs of *habeas corpus,* they generally are required to presume that the factual findings of state courts are correct. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). That presumption is overcome, however, when the state court's finding of fact is "not fairly supported by the record" or when the factfinding procedure used by the state court was "not adequate to afford a full and fair hearing" on the merits of the factual dispute. 28 U.S.C. § 2254(d)(2) and (8). When the Illinois Supreme Court heard petitioner's case on direct appeal, it perceived no evidence in the record to support a finding that Everette had feared for his safety when he shot Island, and it concluded that any claims by Everette that he had acted in self-defense were unworthy of credence. The court made two related factual findings, one concerning the state of the record at the close of evidence, the other concerning the state of Everette's mind at the time he shot Island. We do not presume either finding to be correct.

As the preceding discussion demonstrates, there was sufficient evidence in the record to suggest that petitioner was responding to a perceived threat to his safety when he shot the victim. Although much of the evidence came in the form of possibly self-serving testimony, the Illinois Supreme Court should not have discounted or ignored that evidence simply because the jury might have disbelieved it. Looking at all of the evidence presented, including Everette's testimony, we find that the record does not fairly support the Illinois Supreme Court's finding that there was no evidence in the record to support Everette's self-defense and voluntary manslaughter defenses.

The Illinois Supreme Court's finding can be understood not just as a description of the record but as a conclusion of fact that Everette did not believe that he was on the verge of being attacked when he shot Island. In essence, the court concluded that Everette lied to the jury. We cannot say that the Illinois Supreme Court's finding concerning Everette's subjective beliefs was completely unsupported by the record. On the contrary, there was considerable evidence to suggest that Everette killed without lawful justification. Nevertheless, appellate procedures are not "adequate" for the purpose of making credibility determinations, and, under 28 U.S.C. § 2254(d)(2), findings of fact by state appellate courts that involve credibility determinations are not entitled to a presumption of correctness by the federal judiciary. *Cabana v. Bullock,* 474 U.S. 376, 388 n. 5, 106 S.Ct. 689, 698 n. 5, 88 L.Ed.2d 704 (1986). Judges simply cannot decide whether a witness was telling the truth "on the basis of a paper record." *Id. Cf. Bacon,* 728 F.2d at 875 (1984) (suggesting, prior to *Cabana,* that federal courts should defer to state trial court decisions to withhold instructions on defenses when the evidence supporting those defenses is not "credible").

Respondents contend that the form of analysis we undertake is incompatible with basic precepts of federalism. They claim that if the Illinois Supreme Court holds that particular instructions on state law were adequate, then federal courts cannot review that decision. A similar position was firmly rejected in *Flowers, Taylor,* and *Falconer,* three cases in which federal district courts found instructions on state law to be so muddled as to fail to express the proper relationship between particular defenses and the crimes charged. In those cases, the juries were informed of the existence of the defenses claimed and they could have evaluated those defenses. The convictions were reversed because the trial courts' instructions did not state explicitly that, in Illinois, a finding for the defendant on a defense precludes a finding for the prosecution on the charge of murder. *Cf. Sandstrom v. Montana,* 442 U.S. 510, 516–17, 99 S.Ct. 2450, 2455–56, 61 L.Ed.2d 39 (1979) (assessing the adequacy of a jury instruction and noting that the "Supreme Court of Montana ... is not the final authority on the interpretation which a jury could have given the instruction").

In *Flowers, Taylor,* and *Falconer,* federal courts examined trial court instructions word-by-word to determine whether they adequately described the criminal law of Illinois. Here we need not embark on such an undertaking for the instructions in Everette's trial did not even mention the defenses he had proffered. In the case before us the issue is not whether particular instructions correctly described the Illinois law of self-defense and voluntary manslaughter, but whether there was any evidence in the record to support the giving of instructions on those defenses at all. Here the Sixth Amendment and due process implications are more stark, for the jury was prevented completely from considering the defendant's defenses when making its final determination on guilt or innocence.

■ Under our federal system the states define crimes and defenses, but the federal courts have jurisdiction to decide whether the rights to a trial by jury and due process have been satisfied. Federal courts cannot assume that those federal rights have been honored simply because state courts assert that they have been. *See Norris v. Alabama,* 294 U.S. 587, 590, 55 S.Ct. 579, 580, 79 L.Ed. 1074 (1935). When a petitioner for writ of *habeas corpus* claims that his or her constitutional rights have been violated, we must ask not merely whether they were "denied in express terms but also whether [they were] denied in substance and effect." *See id.* Thus, we occasionally must make independent examinations of the evidence to ensure that federal rights are not frustrated by distorted state court factfinding. *Stein v. New York,* 346 U.S. 156, 181, 73 S.Ct. 1077, 1091, 97 L.Ed. 1522 (1953).

In this case we make such an independent examination. We follow a procedure similar to that used in *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), and other cases in which defendants' federal constitutional claims have turned on the existence of evidence sufficient to support particular verdicts under state law. In *Thompson,* the petitioner had been found guilty in the Police Court of Louisville, Kentucky, of two offenses:

loitering and disorderly conduct. After discussing the contours of those offenses under local law, the Court found the "record entirely lacking in evidence to support any of the charges" and vacated the convictions as violative of due process. *See also Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979) (holding that "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 ... the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt"); *Garner v. Louisiana,* 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961) (surveying Louisiana law to determine what evidence was necessary to support a conviction for disturbing the peace and then determining that there had been no evidence in the record to support such a conviction); *Indiana ex rel. Anderson v. Brand,* 303 U.S. 95, 100, 58 S.Ct. 443, 446, 82 L.Ed. 685 (1938) (observing that the contract clause would become a "dead letter" if the United States Supreme Court did not examine the facts underlying state court rulings to determine whether, under state law, a contract had been formed).

Here petitioner argues not that the evidence was insufficient to support a conviction, but argues instead that the evidence was sufficient to support the defense theories of self-defense and voluntary manslaughter. The specific claim differs from the claims in *Thompson, Jackson,* and *Garner,* but the general method by which it should be evaluated is the same. In petitioner's case that method of analysis compels us to conclude that his rights to trial by jury and due process were violated.

## CONCLUSION

For the foregoing reasons, we grant Everette's petition for writ of *habeas corpus.* The writ shall issue unless the State of Illinois retries him within 120 days.